**STATE of Tennessee, ex rel. Elaine A. McREYNOLDS, Petitioner,**

**Vasudev V. Kulkarni, M.D., Appellee,**

v.

**UNITED PHYSICIANS INSURANCE RISK RETENTION GROUP, Respondent,**

**Jeanne Barnes Bryant, Receiver for United Physicians Insurance, Appellant.**

Supreme Court of Tennessee, at Nashville.

April 22, 1996.

Renard A. Hirsch, Sr. and Gary M. Kellar, Smith & Hirsch, Nashville, for Appellant.

C.J. Gideon, Jr. and John T. Reese, Gideon & Wiseman, Nashville, for Appellee.

REID, Justice.

This case presents for review the decision of the Court of Appeals nullifying the deadline for reporting medical incidents fixed by the receiver during the liquidation of an insolvent insurance company. This Court finds

that the receiver was authorized by statute to terminate coverage and thereby reduce the time allowed for complying with the terms of the policy regarding notice, and that the Court of Appeals erred in allowing the claim for which notice was given subsequent to the date set. The decision of the Court of Appeals is reversed.

This case arose during rehabilitation and subsequent liquidation proceedings of the United Physicians Insurance Risk Retention Group (UPI) by the Commissioner of Commerce and Insurance, pursuant to the Insurer's Rehabilitation and Liquidation Act, Tenn.Code Ann. §§ 56–9–101 to 56–9–510 (1994) (the Act). The stated purpose of the Act is "the protection of the interests of insureds, claimants, creditors and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers...." Tenn.Code Ann. § 56–9–101(d). One statutory means of accomplishing that purpose is by

"[p]roviding for a comprehensive scheme for the rehabilitation and liquidation of insurance companies and those subject to this chapter as part of the regulation of the business of insurance, insurance industry and insurers in this state...." Tenn.Code Ann. § 56–9–101(d)(7).

The appellee, Dr. Vasudev V. Kulkarni, who is a physician, was the insured under a policy issued by UPI providing liability coverage for medical malpractice claims. Kulkarni insists that the claim which is the basis of this case is covered by the policy issued by UPI. Ms. Jeanne Barnes Bryant, receiver for UPI, contends that the claim was not filed within the time allowed and, therefore, is not covered. Resolution of the issue requires the application of the terms of the policy, the provisions of the Act, and the notice given by the receiver to the sequence of significant events.

On November 30, 1991, UPI issued to Kulkarni the medical malpractice policy under which the claim is made. It is a "discovery" or "claims made" policy rather than an "occurrence" policy.[1] The policy provided cov-

---

**1.** A "discovery policy" [claims made policy] is      one wherein the coverage is effective if the

erage for claims made from January 1, 1992, to January 1, 1993, arising from "medical incidents" occurring after March 31, 1987.

On December 9, 1991, within the retroactive coverage period, Kulkarni treated four-year-old Tommie L. Gray, III, in a hospital emergency room. This treatment was the basis of the subsequent claim on behalf of Gray that Kulkarni negligently failed to diagnosis Gray's condition of spinal meningitis, which resulted in the loss of the patient's legs and other disabilities.

On May 1, 1992, upon petition of the Commissioner of Commerce and Insurance, the Chancery Court of Davidson County entered an order placing UPI in receivership for the purpose of rehabilitation and appointed the appellant receiver.[2]

On July 16, 1992, upon petition of the Commissioner, the court entered an order requiring that UPI be liquidated pursuant to the Act. The order provided "that all outstanding policies and coverage be cancelled on August 21, 1992," and that the deadline for filing claims and "proper proof thereof" be July 21, 1993.

On July 24, 1992, the receiver sent a notice to UPI policy holders including Kulkarni, advising that UPI was in liquidation proceedings, that their policies were cancelled effective August 21, 1992, and that all "medical incidents" must be reported to the receiver not later than August 25, 1992.

On August 17, 1992, another notice was sent by the receiver to Kulkarni and other policy holders reminding them that UPI had been placed in receivership on July 16, 1992, and that their policies were cancelled as of August 21, 1992. The notice was accompanied by a proof of claim form and the admonition from the receiver that proofs of claims must be filed by July 21, 1993, and, further, that "you must abide by the written notice

requirements of your policy in order to have a valid claim."

August 21, 1992, was the cancellation date for coverage under all outstanding policies subject to cancellation,[3] which included medical malpractice policies.

August 25, 1992, was the date designated by the receiver within which all "medical incidents" were required to be reported in order to be within the coverage afforded by the policy.

In October 1992, Kulkarni was notified by counsel for Gray that a claim for malpractice was being made against him based on his treatment of Gray on December 9, 1991.

On November 17, 1992, Gray's attorney gave the receiver notice of the claim.

On December 28, 1992, an action for malpractice was filed against Kulkarni on behalf of Gray.

On January 19, 1993, Kulkarni filed with the receiver a proof of claim based on the Gray suit, which was received at the receiver's office on January 25, 1993.

By letter dated January 26, 1993, Kulkarni was notified that his claim had been denied because he failed to report the medical incident involving Gray by August 25, 1992.

Kulkarni filed an objection to the denial, as authorized by the Act. Tenn.Code Ann. § 56-9-327. A special master appointed to hear the matter found that Kulkarni had not followed the required procedure and denied the claim of coverage. The trial court affirmed the report of the special master. *See* Tenn.R.Civ.P. 53.04(2). The Court of Appeals reversed, finding that coverage for the claim should not be denied.

The policy on which the claim is based provided coverage for claims arising from medical care provided by the insured from

---

negligent or omitted act is discovered and brought to the attention of the insurer within the policy term, whereas an "occurrence policy" is a policy in which the coverage is effective if the negligent act or omitted act occurs within the policy period, regardless of the date of discovery. . . .
6B John A. and Jean Appleman, Insurance Law and Practice § 4262 (Richard B. Buckley, rev. ed. 1979).

**2.** The designation of "receiver" rather than "rehabilitator," *see* Tenn.Code Ann. § 56-9-303, or "liquidator," *see* Tenn.Code Ann. § 56-9-307 has been used throughout this proceeding.

**3.** *See* Tenn.Code Ann. § 56-9-308.

March 31, 1987, to January 1, 1993. Consequently, the medical care provided to Gray on December 9, 1991, was within that period of time covered by the policy.

However, the policy required as a condition for coverage that the claim be made during the policy period or that the "medical incident" on which a claim is based be reported during the policy period. The policy provides:

In consideration of the payment of premium, in reliance upon the statements made on the Application and made a part hereof and subject to all of the terms and conditions of this *Policy*, the *Company* agrees with the *Insured* as follows:

To pay all sums which the *Insured* shall become legally obligated to pay as *Damages*, subject to the terms, conditions, exclusions and limits of the *Policy*, because of a *Medical Incident* which occurred while the *Insured* was rendering *Professional Service* during the *Policy Period* and for which *Claim* is first made against the *Insured* and reported to the *Company* during the *Policy Period*. . . .

"Medical incident" and "claim" are defined in the policy as follows:

"MEDICAL INCIDENT" means any act or omission which could or did result in bodily injury, sickness, disease or death to one or more persons for which damages or services are *or may reasonably be expected to be sought* against [an] Insured.

"CLAIM" means a demand upon the Insured for damages or services as a result of medical services provided or which should have been provided by the Insured.

(Emphasis added.) The important difference between a medical incident and a claim is stated in the policy as follows:

ASSISTANCE AND COOPERATION OF INSURED: The *Insured* shall give, by written notice to the *Company*, information regarding any *claim* made against the

*Insured* or *of any specific circumstances involving a particular person likely to result in a claim*. The notice shall identify the *Insured* and the *claimant(s)* or prospective *claimant(s)* and contain reasonably obtainable information with respect to time, place and circumstances of the alleged *injury*, including the names and addresses of available witnesses and the nature and scope of the *claim* anticipated. If a *claim* is made or *suit* is brought against the *Insured*, the *Insured* shall immediately forward to the *Company* every letter, demand, notice, summons, or other process received by the *Insured* or the *Insured's* representative. The *Insured* shall comply with all provisions in Section III.

(Emphasis added.)

The parties agree that notice of the insured's claim, though made within the time designated by the liquidation order for "proof of claims," was not made prior to August 21, 1992, the date coverage was terminated by the order of liquidation; nor was it made prior to August 25, 1992, the date set by the receiver for reporting medical incidents. However, the policy provides that "[f]ormal reports of *medical incident* made by the Insured to the Company ... shall be considered notice of claim." (Emphasis added.) The issue, then, is whether the insured reported the "medical incident," his treatment of Gray, during the "policy period." Kulkarni contends that the policy period expired on January 1, 1993, the original expiration date of the policy and that notice by Gray's attorney on November 17, 1992 was sufficient. The receiver insists that notice was required to be given not later than August 25, 1992, four days after coverage terminated and the date set by the receiver pursuant to the order of liquidation. If the receiver's contention is correct, the claim is barred, because no notice of a claim or a medical incident was given within the time allowed by the receiver's order.[4]

---

4. Had the insured been able to purchase what is known as "long tail coverage" from the liquidated insurance company, he would have had coverage for incidents not reported prior to the termination of his policy. Tail coverage allows an insured to report a medical incident after the termination of his policy. 2 Rowland H. Long,

*The Law of Liability Insurance* § 12.02 (1992). The notice from the receiver dated July 24, 1992, stated specifically that "Although the policy provides physicians the option of electing the purchase of the Extended Reporting Endorsement (tail), because of the liquidation, this option is not available." However, the insured would

The receiver's letter dated July 24, 1992, stated that all medical incidents must be reported to the receiver not later than August 25, 1992. The receiver's letter dated August 17, 1992, admonished the policyholder that "you must abide by the written notice requirements of your policy." Since the medical incident was not reported within the time allowed by the policy period as limited by the order of liquidation or as stated in the notice given by the receiver, the claim is barred, if the action by the court and the receiver is authorized by the Act.

The holding of the Court of Appeals that the trial court had the authority to terminate coverage but not the authority to reduce the time for filing notice of medical incidents, is not consistent with the statutory grant of broad powers and discretion to the receiver. *See* Tenn.Code Ann. §§ 56–9–308(a); 56–9–310 and 56–9–311. The practical effect of the Court of Appeals' finding that notice could be given at any time within the original policy period would result in a different reporting deadline for each claim, depending upon the expiration date of each policy, and a piecemeal and protracted processing of claims inconsistent with the Act's stated principles of efficiency, economy, and equity. *See* Tenn. Code Ann. § 56–9–101. Statutory authority to terminate coverage implicitly authorizes the receiver to require the performance within the shortened coverage period of all acts, including submitting notice of a medical incident, which, by the terms of the policy, must be performed during the coverage period.

### *Conclusion*

The notice requirement imposed by the receiver was authorized by the Act and the order of liquidation; consequently, because Kulkarni failed to comply with that requirement, the claim is barred, and the claim was properly denied by the receiver.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is reinstated.

Costs are taxed against the appellee, Dr. Kulkarni, for which execution may issue.

have been protected had he, upon receiving notice by the receiver, purchased a "claims made"

ANDERSON, C.J., and DROWOTA and WHITE, JJ., concur.

BIRCH, J., Not participating.

policy or "retroactive coverage" from another insurer.