IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

FILED

March 27, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

|  |  |  |
|---|---|---|
| AMERICAN JUSTICE INSURANCE RECIPROCAL, | ) | **FOR PUBLICATION** |
|  | ) |  |
| Plaintiff/Appellant, | ) | **Filed: March 27, 2000** |
|  | ) |  |
| v. | ) |  |
|  | ) | Certification of Questions of State |
| TIM HUTCHISON, BEN HARKINS, | ) | Law from United States District |
| CHARLES SPANGLER, KNOX | ) | Court for the Eastern District of |
| COUNTY, TENNESSEE and SHERIFF | ) | Tennessee, Northern Division. |
| TIM HUTCHISON, in his official | ) |  |
| capacity, | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) | No.  M1999-00672-SC-R23-CQ |

For Plaintiff-Appellant:

Paul Campbell, III
Witt, Gaither & Whitaker, P.C.
Chattanooga, Tennessee

Reggie E. Keaton
Franz, McConnell & Seymour
Knoxville, Tennessee


For Amicus Curiae:

National Association of Independent Insurers
G. Brian Jackson
Amanda Haynes Young
David L. Johnson
Miller, Martin & Trabue
Nashville, Tennesee

For Defendants-Appellees:

Robert L. Crossley
The Crossley Law Firm, P.C.
Knoxville, Tennessee

John E. Owings
Chief Deputy Law Director
Knox County, Tennessee

Mary Ann Stackhouse
Deputy Law Director
Knox County, Tennessee

# O P I N I O N

DROWOTA, J.


## QUESTIONS CERTIFIED

Pursuant to Rule 23 of the Rules of the Supreme Court of Tennessee,[1] this Court has accepted two questions certified to us by the United States District Court for the Eastern District of Tennessee. The questions are as follows:

> 1. Whether the Sheriff of Knox County and employees of the Knox County Sheriff's Department were volunteers of the Scott County Sheriff's Department when they received no compensation from Scott County but received their regular salary from Knox County.

> 2. Whether a standard liability policy is automatically forfeited when the insured fails to comply with the policy's notice provision, regardless of whether the insurer has been prejudiced by the delay.

As explained below, the answer to the first certified question is that the Knox County Sheriff and employees of the Knox County Sheriff's Department were volunteers of the Scott County Sheriff's Department when they rendered assistance in connection with a siege in Scott County but received no compensation from Scott County. We reach this conclusion because we find the term "volunteer," as used in the liability policy issued to the Scott County Sheriff's Department, to be ambiguous. With respect to the second question, we conclude that a standard liability policy is not automatically forfeited when the insured fails to comply with a policy's notice provision. Rather, breach of a notice provision

---

[1] Supreme Court Rule 23, § 1, provides: "The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is not controlling precedent in the decisions of the Supreme Court of Tennessee."

establishes a presumption that the insurer was prejudiced by the failure to provide timely notice. The insured may rebut the presumption with competent evidence that the insurer was not prejudiced by the delay in notice.

## FACTS AND PROCEDURAL BACKGROUND

On January 22 and 23, 1994, Max Carpenter, a Scott County resident, barricaded himself in his trailer home in an effort to resist arrest. Believing Mr. Carpenter to be armed, law enforcement officials attempted to negotiate with him before resorting to the use of ammunition and tear gas to force Mr. Carpenter from the trailer. Initially the officers involved in the siege included only Scott County Sheriff's deputies and agents of the Tennessee Bureau of Investigation ("TBI"). However at some point during the incident the Scott County Sheriff's Department asked the TBI to contact the Knox County Sheriff's Department to request assistance in removing Mr. Carpenter from the trailer home. In response to this request, Tim Hutchison, the Sheriff of Knox County, went with two deputies to the scene and aided efforts to eject Mr. Carpenter from the trailer. The Knox County Sheriff and deputies did not receive any form of compensation from Scott County in connection with the assistance they provided to the Scott County Sheriff's Department. As salaried employees of the Knox County Sheriff's Department, they each received their regular salary for the pay period that included the time they provided assistance in the Carpenter incident.

Mr. Carpenter died as a result of the confrontation with the law enforcement officials. As a result, in 1994, representatives of his estate filed a wrongful death

suit against the Scott County Sheriff's Department and several of its deputies in the United States District Court for the Eastern District of Tennessee.[2] The Scott County defendants were served with the complaint in August and October 1994, and filed an answer in January 1995. On June 6, 1995, pursuant to discovery procedures, they issued disclosures in which they stated that American Justice Insurance Reciprocal ("American Reciprocal"), the liability insurance carrier for the Scott County Sheriff's Department, may be liable to satisfy all or part of any judgment rendered against them. A copy of their policy with American Reciprocal was attached to the disclosures.

Also named as defendants in the Carpenter wrongful death suit were Knox County and Knox County Sheriff Tim Hutchison, in both his official and individual capacities, as well as deputies Ben Harkins and Charles Spangler, in their individual capacities ("Knox County defendants"). The Knox County defendants were served with the complaint on August 1, 1994. They then proceeded to defend the lawsuit without making a request that American Reciprocal provide a defense on their behalf and incur liability for any judgment rendered against them. The Knox County defendants assert that they were not aware of the general liability insurance policy issued by American Reciprocal to the Scott County Sheriff's Department until June 6, 1995.

In September 1997, Knox County Sheriff Hutchison and the two deputies

---

[2] Also named as defendants were two members of the Campbell County Sheriff's Department, two park rangers and a TBI agent. See Grace M. Carpenter v. Jack Laxton, et. al., No. 3-94-CV-438.

4

wrote to American Reciprocal and demanded that the company provide benefits under the policy with regard to their potential liability in the Carpenter suit. In response to this demand, American Reciprocal filed an action in the United States District Court for the Eastern District of Tennessee to obtain a declaratory judgment asserting that it is not liable to the Knox County defendants under the liability policy it had issued the Scott County Sheriff's Department. As basis for the suit, American Reciprocal asserted that the Knox County defendants were not "volunteers" of the Scott County Sheriff's Department, within the meaning of the policy, in connection with the assistance they provided in the Carpenter incident. The insurance company further contends that the Knox County defendants failed to provide it with timely notice of the January 22-23, 1994 incident or the filing of the Carpenter suit against them and that they therefore forfeited any coverage under the policy.

The Knox County defendants filed a counterclaim for a declaratory judgment asserting that they are entitled to coverage under the liability policy in connection with the Carpenter suit because they were volunteers of the Scott County Sheriff's Department within the meaning of the liability policy. On August 16, 1999, after both American Reciprocal and the Knox County defendants filed motions for summary judgment, the District Court filed an order in this Court certifying the questions of law quoted above.

Although the parties devote significant portions of their briefs in this Court to discussion of factual disputes surrounding the Carpenter incident, we need not address these issues in resolving whether the Knox County defendants were

5

volunteers of the Scott County Sheriff's Department within the meaning of the liability insurance policy. Moreover, we need not address factual disputes concerning compliance with the notice provision because the District Court made implicit findings that the Knox County defendants failed to give timely notice under the liability policy but that such failure did not result in prejudice to the insurance company.

## QUESTION ONE

The first question of law to be resolved, as certified by the United States District Court for the Eastern District of Tennessee, is whether the Sheriff of Knox County and employees of the Knox County Sheriff's Department were volunteers of the Scott County Sheriff's Department when they received no compensation from Scott County but received their regular salary from Knox County. After a careful review of the policy at issue and the parties' arguments, we conclude that they were volunteers.

The policy issued by American Reciprocal to the Scott County Sheriff's Department is a standard general liability policy covering "those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'property damage' arising out of the insured's operations in the performance of or failure to perform official law enforcement duties." The policy provides that the term "insured" includes "volunteers," but "only for acts within the scope of their law enforcement duties for [the Scott County Sheriff's Department]." The policy does not define the term "volunteers."

6

In general, courts should construe insurance contracts in the same manner as any other contract. See McKimm v. Bell, 790 S.W.2d 526, 527 (Tenn.1990); Draper v. Great Am. Ins. Co., 458 S.W.2d 428, 432 (Tenn. 1970). The language of the policy must be taken and understood in its plain, ordinary and popular sense. See Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975). Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. See Tata v. Nichols, 848 S.W.2d 649, 650 (Tenn. 1993). If the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured. See Allstate Ins. Co. v. Watts, 811 S.W.2d 883, 886 (Tenn. 1991); Renfro v. Doe, 979 S.W.2d 311, 312-13 (Tenn. Ct. App. 1998).

When called upon to interpret a term used in an insurance policy that is not defined therein, courts in Tennessee sometimes refer to dictionary definitions. See Tata v. Nichols, 848 S.W.2d at 653; Hogins v. Ross, 988 S.W.2d 685, 687 (Tenn. Ct. App. 1998). Black's Law Dictionary, 1576 (6th ed. 1990), defines "volunteer" as follows:

> A person who gives his services without any express or implied promise of remuneration. One who intrudes himself into a matter which does not concern him, or one who pays the debt of another without request, when he is not legally or morally bound to do so, and when he has no interest to protect in making such payment. A person who pays the debt of another without a request, when not legally or morally bound to do so and not in protection of his own interest.

Focusing on the content of this and similar definitions of the term "volunteer," both parties have propounded arguments focusing on whether the

Knox County defendants assisted the Scott County Sheriff's Department with expectation of compensation and whether being dispatched to the neighboring county constitutes acting of one's own free will. While both sides have made plausible arguments concerning these issues, based on the language of the policy, we cannot discern whether it was the intent of the drafters that the definition of "volunteer" encompass the type of assistance provided by the Knox County defendants. Because the language of the policy is susceptible to more than one reasonable interpretation, as is evidenced by the arguments advanced by each party, the term "volunteer," as it is used in the policy, is ambiguous. As such, we resolve the ambiguity by construing the term "volunteer" in favor of the insured, and conclude that the Knox County defendants were volunteers within the meaning of the liability insurance policy issued to Scott County while rendering assistance to the Scott County Sheriff's Department during the January 1994 Carpenter incident.

## QUESTION TWO

The second question of law to be resolved, as certified by the District Court, is whether a standard liability insurance policy is automatically forfeited when the insured fails to comply with the policy's notice provision, regardless of whether the insurer has been prejudiced by the delay. Although the parties dispute whether the Knox County defendants fulfilled the policy's notice provisions, in addressing this question, we acknowledge that the District Court implicitly assumed: (1) that the Knox County defendants failed to comply with the policy's notice provisions, and (2) that such failure to provide notice did not result in prejudice to the insurer,

8

American Reciprocal.    These factual issues not relevant to the question before us, we focus only on the certified question of law.[3]

In Alcazar v. Hayes, 982 S.W.2d 845 (Tenn. 1998), this Court considered whether an uninsured motorist insurance policy is automatically forfeited when the insured does not comply with the policy's notice provision, regardless of whether the insurer was prejudiced by the delay.    Abandoning the traditional approach, which recognized that notice is a condition precedent to recovery under a policy and that no showing of prejudice to the insurer need be required to result in forfeiture, in Alcazar we adopted the modern trend and held that in order for forfeiture of an insurance policy to result from an insured's breach of a notice provision, prejudice to the insurer must be shown.  See Alcazar v. Hayes, 982 S.W.2d at 856.

American Reciprocal argues that the holding in Alcazar should not be extended to apply in the instant case because this case concerns a general

[3]The notice provision in the policy issued to the Scott County Sheriff's Department by American Reciprocal provides:

> We have no duty to provide coverage under this policy unless you and any other involved insured have fully complied with the conditions contained in this policy.
> 1. Duties in the Event of Occurrence, Claim or Suit.
>      a.  You must see to it that we are notified in writing as soon as practicable of any occurrence which may result in a claim.  To the extent possible, notice should include:
>          (1) How, when and where the "occurrence" took place;
>          (2) The names and addresses of any injured persons and witnesses; and
>          (3) The nature and location of any injury or damage arising out of the "occurrence."
>      Notice of an "occurrence" is not notice of a "claim."
>      b.  If a "claim" is received by any insured you must:
>          (1) Immediately record the specifics of the "claim" and the date received; and
>          (2) Notify us in writing as soon as practicable.
>      c. You and any other involved insured must:
>          (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit" . . .

9

liability policy rather than an uninsured / underinsured motorist policy, as was at issue in Alcazar. American Reciprocal contends that the rationale behind Alcazar's holding does not apply in cases dealing with general liability policies because it is obvious to an insured under a standard liability policy that, in order for the insurance company to provide a defense, the insured must inform the company that a lawsuit has been filed. The company argues that, on the other hand, common sense does not dictate that one insured by an uninsured / underinsured motorist policy should notify the insurance company when the insured files a lawsuit.

The National Association of Independent Insurers (NAII), a national trade organization representing hundreds of insurers, agrees that the holding in Alcazar should not be extended to encompass general liability insurance policies. In an amicus curiae brief, the NAII highlights distinctions between uninsured motorist policies and standard liability policies in an effort to persuade this Court that the Alcazar holding should not be expanded. The most significant distinction it notes is the differing public policy objectives behind each type of policy. Uninsured motorist coverage is required by all automobile liability policies, the NAII points out, indicating the legislature's objective of compensating victims of accidents caused by uninsured and underinsured motorists. Requiring prejudice to the insurer safeguards this objective by making recovery more accessible to the insured. No such policy consideration, argues the NAII, is implicated where general liability policies are concerned. Because such policies are not mandated and are voluntarily purchased, the unique policy considerations present in Alcazar do not arise in the context of general liability policies, and the notice provisions

10

should be more strictly enforced.  Accordingly, asserts the NAII, prejudice to the insurer is irrelevant to whether forfeiture of an insurance contract should result from an insured's breach of a notice provision.

We disagree with these contentions.  In Alcazar we observed three policy reasons for adopting the modern view that prejudice to an insurer should be required as a prerequisite to forfeiture of a policy based on failure to give timely notice:  "(1) the adhesive nature of insurance contracts; (2) the public policy objective of compensating tort victims; and (3) the inequity of the insurer receiving a windfall due to a technicality."  Alcazar v. Hayes, 982 S.W.2d at 850.  In examining these objectives in the instant case, we conclude that these rationales apply to liability insurance policies to the same degree as to uninsured motorist policies.  Both types of insurance policies are contracts of adhesion, in that they are "form contracts drafted by the insurer, and the insured has little, if any, bargaining power."  Alcazar v. Hayes, 982 S.W.2d at 850.  With both types of policies the insurer would receive a windfall due to a technicality if there were a forfeiture without there being any prejudice to the insurer.   With respect to the public policy of compensating tort victims, this objective would be served in cases in which an insured under a liability policy is financially incapable of paying a judgment.   In sum, contrary to the contentions of the appellant and amicus curiae, we conclude that, for purposes of deciding whether prejudice to the insurer should be required before a policy is forfeited based on breach of a notice provision, there is no significant difference between an uninsured motorist policy and a general liability policy.  The public policy objectives are achieved by the modern trend adopted in Alcazar with respect to each policy.

11

Although in <u>Alcazar</u> we declined to decide whether the modern trend applies to standard liability policies,[4] nothing in the <u>Alcazar</u> holding indicates that the modern trend is limited to uninsured / underinsured motorist policies.  The treatises upon which we relied in deciding <u>Alcazar</u> do not indicate that there is, or that there should be, a distinction between uninsured motorist policies and liability policies in discerning whether failure to comply with a notice provision should result in forfeiture of the policy when the insurer is not prejudiced by the delay.  <u>See</u> Charles C. Marvel, Annotation, *Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers*, 32 A.L.R. 4th 141, §3[a] (1984 & Supp. 1997); 1 <u>Appleman on Insurance, 2d</u>, § 4.30 (1996); 13A George J. Couch, et al, <u>Couch on Insurance</u>, §§ 49: 338 & 49:50 (2d rev. ed. 1982).  Moreover, many of the cases we cited in <u>Alcazar</u> in support for the modern trend involve liability insurance policies.  <u>See</u> <u>Aetna Cas. & Sur. Co. v. Murphy</u>, 538 A.2d 219 (Conn. 1988); <u>Jones v. Bituminous Cas. Corp.</u>, 821 S.W.2d 798 (Ky. 1991); <u>Johnson Controls, Inc. v. Bowes</u>, 409 N.E.2d 185 (Mass. 1980); <u>Great Am. Ins. Co. v. C.G. Tate Constr.</u>, 279 S.E.2d 769 (N.C. 1981); <u>Brakeman v. Potomac Ins. Co.</u>, 371 A.2d 193 (Pa. 1977); <u>Cooperative Fire Ins. v. White Caps, Inc.</u>, 694 A.2d 34 (Vt. 1997).  We find no compelling reason to limit our holding in <u>Alcazar</u> to uninsured / underinsured motorist policies.

After having decided that prejudice to the insurer is a prerequisite to a forfeiture of a policy based on a failure to comply with a notice provision, in

---

[4]<u>Alcazar v. Hayes</u>, 982 S.W.2d at 856 n.14.

12

Alcazar we considered three alternatives regarding the burden of proof that should

apply in determining whether prejudice exists.   We observed:

> States that consider prejudice essentially follow one of three
> different approaches:  (1) once it is shown that the insured has
> breached the notice provision, the contract is, nevertheless, effective
> unless the insurer shows that it has been prejudiced by the delay; (2)
> once it is shown that the insured has breached the notice provision,
> a rebuttable presumption exists that the insurer has been prejudiced
> by the delay; and (3) prejudice to the insurer is considered a factor in
> the initial inquiry of whether the insured provided timely notice.

Alcazar v. Hayes, 982 S.W.2d at 853.

This Court concluded that the second alternative, which sets up a

rebuttable presumption of prejudice, "provides the best balance between the

competing interests." Alcazar v. Hayes, 982 S.W.2d at 856.   We held:

> . . . once it is determined that the insured has failed to provide timely
> notice in accordance with the insurance policy, it is presumed that
> the insurer has been prejudiced by the breach.  The insured,
> however, may rebut this presumption by proffering competent
> evidence that the insurer was not prejudiced by the insured's delay.

Alcazar v. Hayes, 982 S.W.2d at 856.

The appellant and amicus curiae argue that if this Court elects to extend

the rule in Alcazar to liability insurance policies, we should apply the rebuttable

presumption approach adopted in Alcazar rather than one of the two other

models.[5]  We agree.  In Alcazar we noted that "[s]ince the issue is not before us,

---

[5]The NAII also asks this Court to apply this rule only to "occurrence" policies, and not to "claims made" policies. They point out that the instant case involves an "occurrence" policy. This question was not certified to us by the District Court and, accordingly, will not be addressed.

we need not decide whether this approach should apply to a standard liability policy." Alcazar v. Hayes, 982 S.W.2d at 856 n.14.  Now the issue of which burden of proof regarding prejudice in cases involving liability policies is before us, and we believe, as we did in Alcazar, that the rebuttable presumption model best achieves the competing interests at stake.  In fact, many of the cases we cited in Alcazar in support of the decision to adopt the rebuttable presumption of prejudice model involved a failure to give notice of the filing of a lawsuit under a liability insurance policy.  See Tiedtke v. Fidelity & Cas. Co., 222 So.2d 206 (Fla. 1969); Miller v. Dilts, 463 N.E.2d 257 (Ind. 1984); Fillhart v. Western Res. Mut. Ins. Co., 684 N.E.2d 1301 (Ohio App. 1996); Gerrard Realty Corp. v. American States Ins. Co., 277 N.W.2d 863 (Wis. 1979).  Accordingly, when an insured has failed to provide timely notice of a claim against it in accordance with a liability insurance policy, it is presumed that the insurer has been prejudiced by the breach.  The insured may rebut this presumption by proffering competent evidence establishing that the insurer was not prejudiced by the insured's delay.

## CONCLUSION

For the reasons stated above, our answer to the first certified question is that the Knox County Sheriff and the employees of the Knox County Sheriff's Department were volunteers of the Scott County Sheriff's Department within the meaning of the liability insurance policy issued to the Scott County Sheriff's Department when they rendered assistance in the 1994 Carpenter incident.  Our answer to the second question is that a standard liability policy is not automatically forfeited when an insured fails to comply with a policy's notice provision.  Rather,

14

breach of a notice provision establishes a presumption that the insurer was prejudiced by the delay. The insured may rebut the presumption with competent evidence that the insurer was not prejudiced by the delay in notice.

The clerk will transmit this opinion in accordance with Rule 23, § 8 of the Rules of the Supreme Court. The costs in this Court will be taxed to the Appellant, American Justice Insurance Reciprocal.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C.J.
Birch, Holder, Barker, J.J.