IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 19, 2002 Session

## ANNE B. POPE, ET AL. v. LEUTY & HEATH, PLLC, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 00-1370-I     Irvin H. Kilcrease, Jr., Chancellor**

---

### No. M2001-00736-COA-R3-CV - Filed May 21, 2002

---

The receivers of a group of insolvent life insurance companies brought a malpractice action against an accounting firm that had performed allegedly negligent audits of the companies. The accounting firm denied any negligence, and filed a third party complaint against its professional liability insurer, requesting payment of benefits under an expired policy. The trial court dismissed the third-party complaint, ruling that the insurance policy was a claims-made policy and that the insurer was no longer obligated to its former insured. The court certified its order as final for purposes of appeal. We have concluded that the trial court was correct, and we affirm its order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and ROBERT L. JONES, SP. J., joined.

William W. Gibson, J. Graham Matherne, Andrew B. Campbell, Lyle Reid, and Jonathan D. Rose, Nashville, Tennessee, for the appellant, Anne B. Pope.

Charles G. Copeland and Robert C. Richardson, Ridgeland, Mississippi, for the appellant, George Dale.

Douglas Schmidt, Kansas City, Missouri, for the appellant, Scott B. Lakin.

Susan M. Loving, Edmond, Oklahoma, for the appellant, Carroll Fisher.

Ronald G. Harris, Nashville, Tennessee, for the appellee, Continental Casualty Company.

## OPINION

### I. An Insurance Empire Goes Into Receivership

Certified Public Accountants James Leuty and Stewart Heath are the principals of an accounting firm with offices in Franklin, Tennessee. In 1992, the firm of Leuty & Heath, PLLC, was engaged to perform independent auditing for Franklin American Corporation, and for its wholly-owned subsidiary, Franklin American Life Insurance Company.

Franklin American Corporation was itself controlled by another entity. A Tennessee trust named the Thunor Trust had purchased an 85% interest in Franklin American in 1991. In subsequent years, the Thunor Trust purchased five other insurance companies, which were domiciled in the states of Mississippi, Missouri, and Oklahoma. As additional insurance companies were acquired, Leuty & Heath were engaged to perform independent auditing services for them, as well as tax accounting and preparation services. The defendants also performed similar services for the Thunor Trust itself, and for other entities related to the Trust.

Between June 29, 1999 and January 14, 2000, the insurance companies mentioned above were ordered into liquidation by the courts in the four states in which they were domiciled. Martin Frankel, the man who allegedly controlled a financial empire that included the insurance companies, a securities trading firm, a non-profit foundation, and the Thunor Trust, was indicted in both state and federal courts for fraud, criminal conversion, and for allegedly looting at least $215 million from the assets of the insurance companies.

### II. A Malpractice Suit and a Third-Party Complaint

On May 2, 2000, the insurance commissioners of Tennessee, Mississippi, Missouri, and Oklahoma filed a complaint for professional malpractice against Leuty & Heath, PLLC, James Leuty, and Stewart Heath in the Chancery Court of Davidson County. The complaint alleged that the defendants should have known about and reported numerous irregularities in the manner in which the companies they audited handled their assets.

On August 4, 2000, the defendants filed an answer in which they denied any negligence, and in the alternative pled comparative fault. They claimed that any negligence of which they may have been guilty had to be measured against the negligence of the plaintiffs in failing to properly regulate the insurance companies in question while performing their official duties. The answer also included the third-party complaint that is the subject of this appeal.

The third-party complaint described the dealings between Leuty & Heath and their professional liability insurer. The defendants recited that in August of 1997, they had purchased a $1,000,000 professional liability insurance policy from Continental Casualty Company, an Ohio corporation. They described the policy as a "'claims-made' as opposed to an 'occurrence' policy"

and stated that it "only covered claims which were both made against Leuty & Heath and reported to Continental Casualty within the policy period."

The policy period ran from September 1, 1997 to August 31, 1998. In August of 1998, Leuty & Heath renewed the policy for another year, but Continental Casualty unilaterally reduced the policy's liability limit to $500,000. In the spring of 1999, while the above policy remained in force, the plaintiffs put the six insurance companies into receivership. In August of 1999, Continental Casualty refused to renew the policy. Instead, the insurer offered Leuty & Heath a policy with coverage of only $100,000, and a premium that the defendants described as excessive. Unable to find other coverage, and unwilling to pay such a large premium, Leuty & Heath were left without any professional liability coverage after August 31, 1999.

On March 7, 2000, Stewart Heath wrote a letter to Continental Casualty, notifying the insurer that he had been informed by telephone that certain state insurance regulatory agencies were contemplating a malpractice lawsuit against Leuty & Heath. A claims consultant responded by letter on behalf of Continental, declaring that "the claim was not made or reported until the policy period and extended claim reporting period expired," and that in accordance with the provisions of the policy, "[r]egrettably, we must notify you that there will be no defense provided nor indemnity offered."

The defendants argued in their third-party complaint that Continental became aware of the possibility of a lawsuit against their insured during the policy period, that their knowledge should be considered legally equivalent to the notice required by the insurance contract, and that it was inequitable to allow the insurer to deny coverage or to refuse to renew the policy. They asked the court to declare that Continental was obligated to defend and indemnify Leuty & Heath consistent with the terms of the original $1,000,000 policy.

Continental Casualty filed a Motion to Dismiss the Third Party Complaint on October 6, 2000 for failure to state a claim upon which relief can be granted. *See* Rule 12.02(6), Tenn. R. Civ. P. The insurer claimed that based upon the language of the insurance policy at issue and the undisputed facts pled in the third-party complaint, it was entitled to dismissal of that complaint as a matter of law.

Leuty & Heath and the insurance commissioners filed Responses in Opposition to the Motion to Dismiss. Both parties submitted materials outside the pleadings, including documents obtained in discovery, and numerous newspaper articles describing an evolving story of massive insurance fraud perpetrated by Martin Frankel and others. Oral argument on the Motion to Dismiss was heard on February 9, 2001, with counsel for all parties participating. On February 26, the trial court granted Continental Casualty's Motion to Dismiss. The court also declared that there was no just reason for delay, and certified the dismissal as a final judgment for purposes of appeal under Rule 54.02, Tenn. R. Civ. P. Leuty & Heath and the commissioners filed notices of appeal, but Leuty & Heath subsequently asked that their appeal be dismissed, leaving the four commissioners as the sole remaining appellants.

## III. THE POLICY

A copy of the policy that took effect on September 1, 1998 is the first exhibit in the record. At the head of the first page of the policy are the following words, printed in bold upper case letters:

**YOUR ACCOUNTANTS PROFESSIONAL LIABILITY INSURANCE IS WRITTEN ON A "CLAIMS-MADE" BASIS. IT PROVIDES COVERAGE FOR THOSE CLAIMS WHICH ARE BOTH FIRST MADE AGAINST YOU AND REPORTED TO US IN WRITING DURING THE POLICY PERIOD.**

We will discuss the meaning of this declaration in another section of this opinion.

The Section entitled **COVERAGE AGREEMENTS** begins,

"We will pay on **your** behalf all sums in excess of the deductible, up to our limits of liability, that you become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against **you** and reported in writing to us during the **policy period** by reason of an act or omission in the performance of **professional services** by **you** or by any person for whom **you** are legally liable . . ." (words in bold typeface are in original).

We note that the definitions section of the policy defines the "policy period" as "the period of time from the effective date and time shown on the Declarations and the date and time of termination, expiration or cancellation of this policy."

Section V. of the policy sets out the conditions for coverage, including the duties of the insured in the event of a claim (Subsection C), and the duties of the insured in the event of a potential claim (Subsection D), which reads as follows:

If, during the **policy period, you** become aware of an act or omission that may reasonably be expected to be the basis of a **claim** against **you, you** must give written notice to us as soon as possible during the **policy period**. Such notice must state the reasons for anticipating a **claim**, with full particulars, including, but not limited to:

1. The specific act or omission;
2. The dates and persons involved;
3. The identities of anticipated or possible claimants;
4. The circumstances by which **you** first became aware of the possible **claim**.

If such notice is given, then any such **claim** that is subsequently made against **you** and reported to **us** shall be deemed to have been made at the time such written notice was given to us.

Finally, Section VI of the policy references a sixty day **"EXTENDED CLAIM REPORTING PERIOD**." Under its terms, cancellation or non-renewal of the policy automatically triggers this new reporting period, which would extend sixty days from the termination of the policy period. The insured would be entitled to report any claims made against it during the sixty day period if they resulted from an act or omission that occurred prior to the end of the policy period, and to receive coverage for those claims, if such claims were otherwise covered under the policy.

It is undisputed that Leuty & Heath did not report the potential claim against them within either the policy period or the extended claim reporting period. They sent their first written notice of the potential claim to the insurer on March 7, 2000, over six months after the end of the policy period, and over four months after the extended claim reporting period. The appellants argue, however, that we should ignore their failure to give timely notice, because the insurer already knew of the possibility of a claim against its insured.

### IV. CLAIMS-MADE AND OCCURRENCE POLICIES

Most policies of liability insurance may be characterized as either occurrence policies or claims-made policies. Occurrence policies protect policyholders against incidents that occur while the policy is in force, even if the claim that arises from that incident is not filed until after the policy expires or is terminated. Claims-made policies protect policyholders against claims that are filed while the policy is in force, even if the incident giving rise to the claim occurred before the policy was executed. *See State ex rel. McReynolds v. United Physicians Ins. Risk Retention Group*, 921 S.W.2d 176 (Tenn. 1996).

As we stated above, Leuty & Heath admitted in their third-party complaint that their contract with Continental was a claims-made policy; the policy itself declares that it was written on a claims-made basis; and it further states that the insurer will pay damages and expenses that arise "because of a claim that is both first made against you and reported in writing to us during the policy period . . . ."

Appellants present two arguments in an attempt to dispose of the unambiguous coverage and notice provisions found in the policy. The first of these arguments is that the policy is not a true claims-made policy, and thus that they should not be limited by the coverage provisions that normally accompany such a policy. The second is that the insurer had actual knowledge that a claim might be filed against its insured, thus rendering the notice requirement unnecessary, or at least questionable under the rule announced in *Alcazar v. Hayes*, 982 S.W.2d 845 (Tenn. 1998). We will deal with each of these arguments in order.

Appellants rely upon Subsection V(D) and Section VI, *supra*, of the contract as the basis of their first argument. Appellee stated at oral argument that such provisions are actually fairly standard in claims-made policies, but appellants argue that their inclusion in the policy makes it some sort of hybrid between a pure claims-made policy and an occurrence policy.

We note that Leuty & Heath admitted in their third-party complaint that their policy was a claims-made rather than an occurrence policy, and the appellants conceded at oral argument that they are bound by that admission, even though they did not make it themselves. Further, this proposed re-definition of the policy was not argued in any earlier proceeding, and thus we are not obligated even to consider it on appeal. *See* Rule 36(a) Tenn. R. App. P.

Even if we put those objections aside, we cannot find any merit in appellant's argument, which was apparently designed to convince us that the policy provisions were not so plain and unambiguous. The policy's coverage section, however, states with precision the circumstances that trigger the obligations of the insurer, and these appear to be within the normal parameters of a claims-made policy. The additional sections referenced above may extend that coverage slightly, but they still confine coverage to claims made (or deemed to be made) within time limits described in the policy. In denying coverage to Leuty & Heath, the insurer relied upon the fundamental terms of the policy, and not upon some obscure technicality, as the appellants suggest.

### IV. THE NOTICE REQUIREMENT AND THE ALCAZAR CASE

*Alcazar v. Hayes*, 982 S.W.2d 845 (Tenn. 1998), involved uninsured and underinsured motorist coverage. In that case, our Supreme Court examined and modified the long-established rule that courts should construe insurance contracts in the same manner as any other contract. That is, that courts should enforce such contracts according to their plain terms, and if the contracts are unambiguous, the courts cannot alter the plain terms by interpretation.

The Court observed that compliance with the requirement of timely notice in auto insurance policies has traditionally been held to be a condition precedent to the insurer's duty to provide coverage to its insured, and that in the absence of such notice the duty did not arise, even if the insurer was not prejudiced by the delay. However, as the Court also noted, the modern trend runs counter to this traditional view, and many states have elected to allow their courts to consider whether the insurer has been prejudiced by the insured's untimely notice before determining whether it is obligated to provide coverage. 982 S.W.2d at 850.

After considering the rationale for the modern trend, and studying the various approaches of the different states to its implementation, the Court determined that "[i]t is now appropriate to depart from a rigid application of the traditional approach," 982 S.W.2d at 853, and it fashioned a new rule for Tennessee. The Court ruled that when an insured does not provide timely notice to its insurer in accordance with the terms of the policy, a presumption of prejudice to the insurer will arise. The insured is entitled, however, to rebut this presumption by presenting competent evidence that the insurer was not prejudiced by the delay. 982 S.W.2d at 856. *See also American Justice Insurance Reciprocal v. Hutchison*, 15 S.W.3d 811 (Tenn. 2000).

Appellants assert that Continental Casualty knew that Leuty & Heath was likely to be hit with a malpractice claim, and thus that the insurer was not prejudiced by the failure of the accounting firm to provide it with the formal written notice required by the contract. We need not question the

assertion that the insurer had actual knowledge of the impending claim, for whether we consider the trial court's order as a dismissal for failure to state a claim under Rule 12.02(6) of the Rules of Civil Procedure, or as a summary judgment under Rule 56, we believe that for purposes of review we are obligated to presume its truth. *See Dobbs v. Guenther*, 846 S.W.2d 270 (Tenn. Ct. App. 1992); *Huckeby v. Spangler*, 521 S.W.2d 568 (Tenn. 1975); *Wyatt v. Winnebago Industries*, 566 S.W.2d 276 (Tenn. Ct. App. 1977).

Even if Continental knew that a claim was possible, however, it does not appear to us that the *Alcazar* rule is applicable to this case. We note that the policies at issue in both *Alcazar* and *Hutchison* were occurrence policies. The *Alcazar* Court did not address claims-made policies, while the *Hutchison* Court explicitly refused to address the question of whether the *Alcazar* rule would apply to such policies. As far as we can tell, our Supreme Court has never applied the rationale of *Alcazar* to a claims-made policy.

The appellants assert that in some jurisdictions, the "modern trend" noted by the Supreme Court in *Alcazar* has been held to apply even to claims-made policies, and that as a matter of public policy, this court should do the same. Appellee responds that such an expansive interpretation of the modern trend is far from universal, and that the public policy reasons stated by the Court for its decision in *Alcazar* do not apply with equal force to situations like the one before us.

In any case, we decline to venture where our Supreme Court chose not to go, and we will not attempt to extend its holdings in *Alcazar v. Hayes*, *supra*, and *American Justice Insurance Reciprocal v. Hutchison*, *supra*, to cases involving claims-made policies, even when those policies allow the insured some extra latitude in claiming the benefits of coverage.

## VI.

We affirm the order of the trial court. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.