# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### 2/19/02 Session

## ALFRED AKIN, ET AL. v. KYLAN THOMPSON, ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 99C-1561, Thomas W. Brothers, Judge

---

### No. M2001-00851-COA-R3-CV - Filed July 12, 2002

---

The plaintiff  Alfred Akin was rear-ended by a vehicle driven by the defendant Kylan Thompson, who was uninsured.  The Allstate Insurance policy on the Akin vehicle provided uninsured motorist coverage with limits of $100,000 per person and $300,000 per occurrence. Though in his personal vehicle, Mr. Akin was in the course and scope of his employment with the Metropolitan Nashville Water Works when injured.  Metro government does not have a workers' compensation program, but has a benefit program for on-the-job injuries, under which it paid more than $100,000 for medical bills and disability benefits.   The trial court held that Allstate's limits were reduced by amounts paid "under any workers' compensation law, disability law, or similar law . . . ." and also found that the loss of consortium claim of Mrs. Akin was derivative in nature and subject to the same $100,000 "each person" limit and reduction.  We affirm the trial court's grant of summary judgment in favor of Allstate.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ROBERT L. JONES, SP.J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J, M.S., and WILLIAM B. CAIN, J., joined.

John B. Carlson and Anna B. Williams, Nashville, Tennessee, for the appellants, Alfred Akin and wife, Peggy Akin

Michael H. Johnson and K. Melissa Bradford, Nashville, Tennessee, for the appellees, Kylan Thompson and Pamela Williams

### OPINION

On June 10, 1998, the plaintiff Al Akin was injured when his personal vehicle was rear-ended by a vehicle driven by Kylan Thompson and owned by Pamela Williams.  Mr. Akin and his wife filed a civil suit against Thompson and Williams, but were unable to serve either defendant.  The

plaintiffs served notice on Allstate Insurance Company and were permitted by order of the trial court to proceed directly against Allstate as their uninsured motorist carrier.

At the time of the accident Mr. Akin was acting in the course and scope of his employment with Metro Water Works, a division of the Metropolitan Government of Nashville and Davidson County ("Metro"). Metro does not have workers' compensation as such, but has a benefit program for work-related injuries under its governmental charter, which pays the employee's medical expenses, 100% of wages for 130 days, and disability benefits thereafter. The total of benefits paid by Metro to or for Mr. Akin exceeded $100,000.

The Akins' policy with Allstate provided that the uninsured motorist coverage was limited to $100,000 for "each person," which was the maximum Allstate would pay for "damages arising out of bodily injury to one person in any one motor vehicle accident, including all damages sustained by anyone else as a result of that bodily injury."

On page 17 of the policy under a heading entitled "Coverage Agreement," the provisions of the uninsured motorist coverage begin as follows:

> We will pay those damages that an insured person is legally entitled to recover from the owner or operator of an uninsured auto . . . .

On pages 19 and 20 of the policy are the following limitations of coverage:

*Limits of Liability*

1.    The coverage limit shown on the declarations page for:
    a)    "each person" is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including all damages sustained by anyone else as a result of that bodily injury . . . .
                                ****
    Limits payable will be reduced by all amounts paid or payable by the owner or operator of the uninsured auto or anyone else responsible.
                                ****
    In no event shall our liability under this coverage be more than the limits of the uninsured motorist coverage provided.

2.    Damages payable will be reduced by:
                                ****
    b)    all amounts paid or payable under any workers compensation law, disability benefits law, or similar law . . . .

Allstate filed a motion for summary judgment and contended that Allstate owed nothing to Mr. Akin because the benefits paid to or for Mr. Akin under provisions of the Metro Charter were

-2-

"paid or payable under any workers' compensation law, disability benefits law, or similar law"and exceeded, thereby fully offsetting, the $100,000 "each person" policy limits. Allstate also contended that nothing was owed to Mrs. Akin on her loss of consortium claim because it was derivative in nature and for purposes of policy limits was included in Mr. Akin's $100,000 "each person" maximum, which included "all damages sustained by anyone else as a result of that bodily injury . . . ."

The plaintiffs disputed the summary judgment motion and contended that Allstate's policy permitted amounts recovered from the owner or operator of the uninsured auto to be offset against "limits payable" rather than the amount of an eventual judgment, but that the "damages payable" language permits a reduction for amounts paid under workers' compensation, disability, or similar law only from the amount of an eventual judgment amount, rather than from policy limits. The plaintiffs contended that the distinction between "limits payable" and "damages payable" either favored the plaintiffs or that such language was ambiguous and must be construed in favor of the insured plaintiffs.

The trial court found there were no genuine issues of material facts, that the Metro benefits received by Mr. Akin were of the type to be offset under the uninsured motorist coverage and that such benefits were to be deducted from the policy limits rather than from the amount of an eventual judgment. Since Mr. Akin had already received benefits in excess of policy limits and Mrs. Akin's claim was derivative, summary judgment was granted against Mr. and Mrs. Akin on their uninsured motorist claim.

The plaintiffs appealed to this court and argue that the trial court erred in holding as a matter of law that (1) the Metro benefits must be offset against policy limits rather than against the amount of an eventual judgment, (2) the Metro benefits were the type used to offset an uninsured motorist claim, and (3) Mrs. Akin's loss of consortium claim was also subject to Mr. Akin's same $100,000 "each person" limit.

On the issue of whether or not the benefits paid to Mr. Akin were of the type for which reductions could be made, a similar issue was presented to this court in *Williams v. Prewitt*, No. 01-A-01-9207-CV-00272, 1992 Tenn. App. LEXIS 951 (Tenn. Ct. App. Dec. 2, 1992), in which the court held the uninsured motorist carrier was entitled to have its liability reduced by payments made to a city employee under a city ordinance. In that case the insurance company's policy said its uninsured motorist "limit of liability" would be reduced by sums "paid or payable because of the bodily injury under any workers' compensation law, disability benefits law, or similar law." In that case it was undisputed that the payments under a city ordinance were under "similar law" and the only dispute in that case dealt with whether or not future payments could be used to offset the liability.

We conclude that benefits paid to or for Mr. Akin under a program provided for under Metro's Charter is under a "similar law" and, therefore, are the type of benefits for which the amount

paid shall be offset against the amounts otherwise payable under Allstate's uninsured motorist coverage.

On the issue of whether the setoff should be against policy limits or the eventual judgment, the trial court and the parties have focused on *Sims v. Stewart*, No. 02-A-01-9901-CV-00008, 1999 Tenn. App. LEXIS 859 (Tenn. Ct. App. Dec. 15, 1999), which held that the insurer was entitled to an offset against the limits under its uninsured motorist policy in the amount of workers' compensation benefits received by the insured. In that case the trial court determined the plaintiff's damage claim against the underinsured motorist to be $198,046.43, deducted $61,862.57 for workers' compensation benefits received by the plaintiff and ordered the uninsured motorist carrier to pay its full limit of $100,000. On appeal, cases from other states were cited for both sides of the issue of whether workers' compensation benefits should be set off against the damage award or against the insurance coverage. The Sims policy with Tennessee Farmers Mutual Insurance Company stated "Damages payable under this coverage . . . shall be reduced by . . . the amount paid or payable under any workers' compensation law, disability benefits law or similar law." The trial court relied on *Sims v. Stewart* in granting summary judgment in favor of Allstate.

Mr. and Mrs. Akin attempt to distinguish *Sims v. Stewart* because the policy language made it clear that "damages payable" meant "under that coverage", rather than an eventual judgment. Mr. and Mrs. Akin contend that this court should find an ambiguity in their Allstate policy, because the words "under this coverage" are not present and that the alleged ambiguity should be resolved in favor of the insureds.

The material facts of this case are undisputed, and our Supreme Court has recognized that issues relating to the scope of coverage present questions of law. *Standard Fire Ins. Co. v. Chester-O'Donley & Assoc., Inc.*, 972 S.W.2d 1, 6 (Tenn. Ct. App. 1998). Therefore, our review concerns whether Allstate is entitled to judgment as a matter of law. We are to conduct a de novo review of the trial court's conclusions of law with no presumption of correctness of the trial court's decision. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

An insurance policy's language is ambiguous if it "is susceptible of more than one reasonable interpretation . . . ." *American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 815 (Tenn. 2000). The courts, however, should "avoid strained constructions that create ambiguities where none exist." *Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d 678, 682 (Tenn. Ct. App. 1999). Moreover, "[a]ll provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).

In *Sims v. Stewart*, the western section of this court relied upon *Hudson v. Hudson Mun. Contractors*, 898 S.W.2d 187 (Tenn. 1995), in which our Supreme Court interpreted another policy providing that amounts payable under its coverage would "be reduced by" amounts paid under any workers' compensation or similar law. Like the *Sims* policy that limited amounts payable "under this coverage," the *Hudson* policy limited amounts payable "under the terms of this insurance."

In a case decided since the briefs of the parties in this case, *State Farm Ins. Co. v. Schubert*, No. E2000-02054-COA-R3-CV, 2001 Tenn. App. LEXIS 405 (Tenn. Ct. App. May 31, 2001), considers different policy language on the same offset issue and reaches a conclusion favorable to the insured. That case discussed and then distinguished the holdings in *Sims* and *Hudson* as follows:

> The UM language in *Sims*, as well as that in *Hudson*, states, in effect, that the insurance company's liability will be reduced by the amount of the workers' compensation benefits payable to the insured. Those provisions clearly state how the insurer's liability is to be *calculated*. The policy language now before us does not focus on a *calculation*; rather, it focuses on what the insurance company *will not pay*. It simply says that if its insured is entitled to recover compensation benefits, it, the insurance company, will not pay those benefits "again." The *Sims* and *Hudson* provisions basically say "we will pay our coverage less the workers' compensation benefits" while the policy before us essentially says "we will not allow you to recover from us any loss paid for by workers' compensation." In our view, there is a huge difference in the import of the language now before us and that before the courts in *Sims* and *Hudson*. That difference is of sufficient magnitude to render the holdings of *Sims* and *Hudson* inapplicable to the facts of the instant case. Our holding today commits State Farm to its coverage liability of $100,000 while, at the same time, steering clear of violating the bargain between State Farm and its policyholder that State Farm would not "again" pay the benefits payable under workers' compensation.
>
> While we find no ambiguity in the policy language under consideration, we note the well-established principle that if a provision in an insurance policy is ambiguous and susceptible to more than one reasonable meaning, we must adopt the meaning favorable to the insured. *Gredig* [*v. Tennessee Farmers Mut. Ins. Co.*], 891 S.W.2d at 912. Thus, even if there is some ambiguity in the UM coverage found in Schubert's policy, we must accept the meaning favorable to him. While State Farm may have meant to say what the policies in *Sims* and *Hudson* clearly say, it failed to do so. As the author of the policy, it must suffer the consequences of this failure. Under the language used by it, it is responsible to Schubert for $100,000.

*State Farm Ins. Co. v. Schubert*, 2001 Tenn. App. LEXIS 405, at *14-16.

Allstate's provisions are certainly far different from the not pay "again" language in *State Farm Ins. Co. v. Schubert*. While the Allstate policy would be essentially identical to those in *Sims* and *Hudson*, if it included the words "under this coverage," it is still unambiguous in its meaning and reduces its coverage amounts in the same calculation manner. Therefore, we agree with Allstate and the trial court that the reduction for amounts paid to or for Mr. Akin is against the policy limits rather than any eventual judgment against the tortfeasors.

On the issue of whether or not Mrs. Akin's loss of consortium claim is subject to the Mr. Akin's same $100,000 "each person" limit, the facts and policy provisions are similar to those in *Green v. United States Auto. Ass'n,* No. E2000-02713-COA-R3-CV, 2001 Tenn. App. LEXIS 603 (Tenn. Ct. App. Aug. 16, 2001), which stated the following:

> A loss of consortium claim is "a derivative claim in that the physical injuries or incapacities of one's spouse give rise to and establish the claim." *Tuggle v. AllRight Parking Sys., Inc.*, 922 S.W.2d 105, 108 (Tenn. 1996), (quoting *Jackson v. Miller*, 776 S.W.2d 115, 117 (Tenn. Ct. App. 1989)). However, a person's "right to recover for loss of consortium is a right independent of the spouse's right to recover for the injuries themselves." *Swafford v. City of Chattanooga*, 743 S.W.2d 174, 178 (Tenn. Ct. App. 1987); *see also* Tenn. Code Ann. § 25-1-106 (providing that "there shall exist in cases where such damages are proved by a spouse, a right to recover for loss of consortium").
>
> &ast; &ast; &ast; &ast; &ast;
>
> . . . The UM Limit of Liability section clearly provides that the "maximum limit of liability for *all resulting damages*, including, but not limited to, all direct, *derivative or consequential damages* recoverable by *any* persons, is the limit of BI liability . . . for 'each person' . . . ." (emphasis added). The Policy, when "taken and understood in its plain, ordinary and popular sense. . .," provides that Plaintiff Green has coverage for her Bodily Injury and that "all resulting damages" sustained by her or "any persons", including Plaintiff Ferguson, are subject to the "each person" UM limit. *American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d at 814.

*Green v. United States Auto Ass'n*, 2001 Tenn. App. LEXIS 603 at #12-15.

We agree with Allstate and the Trial Court that Mrs. Akin's claim for loss of consortium, while independent, is still derivative and is expressly subject to Allstate's "each person" maximum for "damages arising out of bodily injury to one person in any one motor vehicle accident, including all damages sustained by anyone else as a result of that bodily injury."

We affirm the Trial Court's grant of summary judgment to Defendant. The costs on appeal are assessed against the Appellants, Mr. and Mrs. Akin.

_____
ROBERT L. JONES, SPECIAL JUDGE