THOMAS RIDGE *v.* THE SCOTTISH COMMERCIAL INSURANCE COMPANY.

INSURANCE. *Forfeiture. Vacancy.* The insured cannot recover upon a policy of insurance which provides that should the premises become vacant, the policy should be forfeited, where the loss occurred while the premises were temporarily vacant.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

HENDERSON & JOUROLMAN for complainant.

T. S. WEBB for defendant.

McFARLAND, J., delivered the opinion of the court.

This bill was brought to recover upon a fire policy. Among other conditions is the following:

"If the within mentioned premises shall  *   *   * become vacant or unoccupied,  *   *   * without the assent of the company endorsed hereon,  *   *   * then, and in every such case, this policy shall be void."

The policy was effected the 15th of August, 1879, for three years. The house is described as complainant's "one-story and a half brick, shingle roofed building, occupied as a dwelling," etc. The bill charges that it was burned on the 14th of October, of the same year, and that the company has interposed only one objection to the payment of the loss, and that is, "that the house was vacant at the time it was burned."

"The facts with regard to that," says the bill, are as follows: "Said building was at the time it was insured, leased by complainant to a tenant then in possession. At the time of its loss as aforesaid, complainant was absent in Europe on a visit. He left said building in the charge of a capable, prompt, energetic and entirely trustworthy agent, with instructions and full power to keep a tenant in it. Complainant is informed and believes and so avers, that some few days, perhaps four or five days before the day on which said house was burnt as aforesaid, complainant's tenant left said premises and the same became tempo-

arily vacant. But complainant's said agent immediately went into possession and closed said building, and proceeded to procure a good and proper tenant therefor, who was to have, and would have moved into said building on the day after it was burned, and complainant avers that said building was not necessarily vacant, nor was it unoccupied for an unreasonable length of time, nor was 'it thus vacant through any default or neglect of his, or his said agent."

The bill contains the further allegation that the local agent of the company was familiar with the property and the purposes for which it was used, and knew that in all probability it would necessarily become temporarily vacant by the ordinary changing of tenants, and that it was not comtemplated by the parties that the policy should become void in such contingency.

The question whether upon these allegations the company is liable, according to conditions of the policy as above set forth, was properly raised by demurrer and decided in favor of the complainant, but by leave of the chancellor an appeal was prosecuted from his decree.

Counsel for the company have referred us to several cases, holding in accord with their views that in such cases the insurer is not liable, but frankly conceded that authorities may be found upon either side of the question.

It is but a question as to the true interpretation of the contract. Insurance policies are usually accompanied with a great number of conditions and stipu-

lations limiting and restricting the liability. Some of these, at least, are but reasonable, in view of the frauds and impositions to which insurers are subject. It must be confessed, that in many instances, the courts have displayed great ingenuity in explaining away these conditions and holding the insurers liable notwithstanding. These decisions have generally been met by additional restrictions and new conditions and stipulations, and so far it is not easy to see which side has the better of the contest. Where the contract has been fairly entered into it should be fairly construed, and its true import and meaning ascertained without any straining of the language or violent presumptions on either side, and the contract as thus construed should be enforced. It is in accordance with our sens of justice that insurers should be held to the full measure of the liability assumed, but no less so that they shall have the protection of the conditions which the parties have stipulated as parts of the contract.

The argument for the complainant is, that although the house was in fact vacant and unoccupied at the time it was burned, yet it was not the character of vacancy contemplated by the contract. That it being known that the house was leased or rented to tenants, it must necessarily have been contemplated that an occasional change of tenants would probably occur during the three years the policy was to run, and it would be unreasonable to suppose that it was contemplated that the vacancy necessarily occurring upon one tenant moving out and another moving in, should render the policy void, or that the assent of the company should

be obtained to such change of tenants in order to keep the policy alive, and although in this instance the vacancy continued four or five days, yet upon the facts stated, it was no more than the necessary and reasonable vacancy occurring upon a change of tenants, and was therefore not the character of vacancy which, in the meaning of the contract, was to avoid the policy.

Although the language is, that "the policy shall be void" in the event the premises shall become vacant or unoccupied without the assent of the company endorsed on the policy, yet the true meaning doubtless is, that the policy shall be void or inoperative *during the vacancy,* and so it is in terms expressed in some policies. This would be a reasonable stipulation upon the assumption that in the view of the contracting parties, the risk is greater during the time the premises are vacant than when they are occupied, and the parties might reasonably assume that such difference as to the risk really exists. But a stipulation that a temporary vacancy should render the policy void for the entire balance of the period covered by it, notwithstanding the premises be again occupied as before, would be clearly without reason, and hence it should not be so construed.

But the question remains whether in the meaning of this contract the company is liable for a loss that occurred during a time when the premises were vacant?

As intimated, the parties regarded the risk as greater during a vacancy of the premises, and not without

reason, as when the premises are occupied, it is not so much exposed to incendiaries, and the beginning of a fire would be more promptly discovered and extinguished, and hence without any additional permission or without notice, or the assent of the company, they were unwilling to assume the risk during the vacancy, and so the contract stipulates. Now the question is, whether notwithstanding this stipulation the company will, nevertheless, be liable for a loss occurring during a vacancy, provided the vacancy be of short duration, or in the language of the bill, a necessary and not unreasonable vacancy, occurring by a tenant unexpectedly moving out and the difficulty of procuring another to take his place at once. If the risk be greater during a vacancy, then the length of the vacancy is immaterial as to the degree of the risk; it is only material as to the continuance of the risk. A house vacant for five days is during the period as completely vacant as it would be if so continued for six months. The increased risk is the same in either case, the difference being only in the period of its continuance.

Furthermore, how are the courts to determine what would be reasonable vacancy? What period of time shall they fix? If the policy covers a loss occurring during a vacancy continuing *five* days, why not ten or twenty? The same misfortune of the owner might prevent him from getting a tenant for even a longer period. The owner, however, having failed to stipulate for such contingencies, and procure a policy without limit in this respect, and having failed to procure the assent of the company, it simply results that during

the period of vacancy he is without insurance, and carries the risk himself.

In support of this view, we refer especially to *Alston* v. *Insurance Company*, by Supreme Court of North Carolina (1879), 8 Reporter, 246, and *McClure* v. *Insurance Company*, by Supreme Court of Pennsylvania (1879), 8 Rep., 694.

The case most strongly relied upon by complainant's counsel, is *Poss* v. *Insurance Company*, decided by this court at the last term at this place and reported in 7 Lea, 704. The policy in that case was upon a boiler, engine, machinery and tools, etc., in a chair and furniture factory. It provided that it should become void "if the premises should become unoccupied and so remained for more than thirty days, without the assent of the company endorsed on the policy, * * * or if it be a manufactory and it shall cease to be operated without special agreement endorsed on the policy."

The question was whether a temporary suspension of the manufactory for eleven days before the fire, caused by a yellow fever epidemic, rendering it impossible to procure hands, avoided the policy, under the latter part of the clause. It was held that it did not. The argument of the opinion is, that to adhere literally to the language of the contract the policy would become void if the machinery stopped, as Sunday, or to clean out the boiler or make necessary repairs, which would be unreasonable if not absurd; hence it could not mean such a temporary stoppage, and a temporary suspension from the impossibility to procure

33—VOL. 9.

hands was placed upon the same grounds, and it was held that the "ceasing to operate" meant a permanent and not a temporary suspension. At first view there seems to be a strong analogy between that case and the present, but on closer consideration the cases will be found different. In the *Poss* case it will be observed that an additional and almost conclusive consideration in favor of the decision, is that the same clause of the policy contains a condition with respect to buildings, that if they become unoccupied *and so remain for more than thirty days*, the policy shall become void. So it is manifest that it could not have been intended that mere temporary stoppage of the machinery in the building for a less period of time, which does not imply an entire vacancy or abandonment of the building, but which, on the contrary, might well occur when all proper watches and safeguards against fire were observed—should have the effect to render the policy void. As this would be in effect to hold that entire abandonment of the building would not avoid the policy thereon, unless it is continued for more than thirty days; whereas, a temporary stoppage of the machinery for a shorter period would avoid the policy thereon although the building remained unoccupied. But if we apply the rule established in that case to the present, we can only do so by holding that a vacancy to avoid the policy must be permanent and not temporary. This does not seem justifiable upon the language used giving it its natural import and meaning, and it is besides probably opposed to the weight of authority. When would

a dwelling house be considered *permanently* vacant? How long would it have to remain?

A manufactory may cease to be operated with a purpose at the time not to resume, this would be a permanent "ceasing to operate." But a vacancy of a tenement house occupied by a tenant moving out, is not with a purpose that it shall remain permanently vacant. Whether it is to be permanently vacant would depend upon the result, that is, whether a tenant could be procured, and this probably could not be determined until the policy would run out, besides, it has already been said a temporary vacancy is the same as a permanent vacancy, except as to its duration.

It seems to us that by the plain letter of the contract the policy was not in full force when the fire occurred, according to the allegations of the bill. The decree must therefore be reversed, the demurrer sustained and the bill dismissed with costs.

Turney, J., dissenting.