## CAROLINA INS. CO. OF WILMINGTON, N. C., v. ST. CHARLES.
### —98 S. W. (2d) 1088.

Middle Section.    June 27, 1936.

Petition for Certiorari denied by Supreme Court, December 12, 1936.

Aust, McGugin & Spears, of Nashville, for plaintiff in error Insurance Company.

Levine & Levine, of Nashville, for defendant in error St. Charles.

FAW, P. J. This is an action on a policy of fire insurance, tried in the Third circuit court of Davidson county, where judgment was rendered in favor of Paul St. Charles, the plaintiff below, and against Carolina Insurance Company, of Wilmington, N. C., the defendant below, for $614 and all the costs of the cause. After its motion for a new trial had been overruled below, the Insurance Company brought the case to this court by an appeal in the nature of a writ of error and has assigned errors here.

For convenience we will continue to refer to Paul St. Charles as plaintiff, and to the Insurance Company as defendant.

The issuance by defendant of the policy in suit is admitted. The policy was issued on February 18, 1931, and insured the plaintiff, for the term of 3 years, against loss by fire of a dwelling house owned by plaintiff and situated at 1915 Eleventh Avenue North in the city of Nashville, Tenn., to an amount not exceeding $1,500.

Plaintiff sued in the present case to recover a loss of a portion of the insured premises, resulting from a fire on January 13, 1934,

which, he averred, was within the coverage of said policy, and, in his declaration, he laid his damages at $812.50 and interest thereon. Plaintiff also sued for a penalty of 25 per cent., or $203.10.

In the trial court, the defendant filed two pleas tendering the general issues of nil debet and non assumpsit, respectively, and a third plea as follows:

"The policy sued upon contains the following provisions as a part thereof:

" 'Permission granted for the within described premises to be and remain vacant for a period not exceeding sixty days at any one time the term "vacant" being construed to mean an empty building devoid of personal habitation; or, to be and remain unoccupied for a period not exceeding six months at any one time, the term "unoccupied" being construed to mean a building that is entirely furnished, but with personal habitants temporarily absent.

" 'It is made a condition of this insurance that the premises shall be kept properly closed and secured to prevent trespassing or the entrance of unauthorized persons during the term of vacancy or unoccupancy.

" 'If this form is attached to a fire policy and premises are vacant for a period exceeding sixty days, or unoccupied for a perio⸗ exceeding six months, at any one time, this policy is void unless a special form or permission therefor is attached hereto.'

"Defendant avers that the above provisions and conditions of the policy were at all times in full force and effect, unmodified or altered in any way, and that at and before the date of the fire on the 13th day of January, 1934, said property had been vacant in the sense and meaning of the foregoing provisions for more than sixty days and, therefore, said policy became void and was not in force at the date of the fire."

The plaintiff joined issue on the third plea above quoted.

The plaintiff demanded a jury in his declaration, and it appears from the bill of exceptions that oral testimony of witnesses introduced by both parties, respectively, was heard before "Hon. E. F. Langford, Judge, and a jury," and that, at the close of all the evidence, defendant's attorney moved for a directed verdict in favor of defendant upon the ground, in substance, that the undisputed evidence sustained defendant's third plea (hereinbefore quoted). The trial judge stated that the motion would be overruled, but some discussion followed, and defendant's attorney proposed that they "withdraw the jury and let the Court decide it." Although the bill of exceptions does not disclose an acceptance of plaintiff's proposal to "withdraw the jury," etc., its acceptance by plaintiff is necessarily inferable from the judgment entered on the minutes of the trial court, which entry is as follows:

"By agreement of counsel, the jury heretofore demanded in this case is hereby waived; Thereupon this case came on to be heard before the Hon. E. F. Langford, Judge, etc., sitting without the intervention of a jury, upon the evidence, argument of counsel, and due consideration thereof, the Court finds the matters in controversy in favor of the plaintiff, and that the defendant is indebted to the plaintiff in the sum of Five Hundred Sixty-five dollars and Ninety cents ($565.90) and the further sum of Forty-Eight dollars and Ten cents ($48.10) interest, making a total sum of Six Hundred Fourteen Dollars ($614.00).

"It is therefore ordered and adjudged that the plaintiff, Paul St. Charles, have and recover of the defendant Carolina Insurance Co. of Wilmington, Del., the sum of Six Hundred Fourteen Dollars ($614.00), also all the costs of this case, for all of which let execution issue."

In this court it is contended for defendant that its third plea, hereinbefore quoted, presents a complete defense to plaintiff's action, and that the proof established the truth of said plea. Defendant's assignments of error are as follows:

"1. The Court erred in giving any judgment against the defendant because the whole of the evidence disclosed that the house in question, covered by the policy in suit, has been wholly vacant for a period exceeding sixty days before the fire and that no permission had been asked by the plaintiff or granted by the defendant for any additional vacancy permit, and, therefore, under the terms of the policy it was void at the time of the fire and was so void before it is claimed there was any attempt to repair same.

"2. The Court erred in construing the provision granting permission to make repairs or alterations on a house existing at the time the policy was written or to complete one then under construction, as such provision only extended the coverage or protection of the insuring clause to additions, repairs or alterations to existing premises or the completion of a house in process of construction and the materials to be used therein, so as to insure the additions or completions when made. The Court orally (Tr. pp. 63, 64) relied upon this permit clause as a ground for his erroneous conclusion."

Preliminarily, it is insisted for plaintiff that, as there is no assignment of error in this court (as there was in the motion for new trial below) that "there is no evidence to support the verdict," this court "is precluded from reviewing the evidence," and must find that there was evidence supporting the judgment of the trial court.

Formerly the contention just stated might have been sound; but it is now provided by section 10622 of the Code that "in all cases taken by appeal or otherwise to the court of appeals from any

lower court, the hearing in said appellate court shall be de novo, upon the record from the court below when the hearing in the lower court was without a jury, but there shall always be a presumption in the appellate court as to the correctness of the judgment or decree of the lower court, unless the evidence preponderates against the judgment or decree.''

It seems obvious that this case must be treated as a case in which ''the hearing in the lower court was without a jury,'' and, therefore, the hearing in this court must be ''de novo, upon the record from the court below,'' but with the presumption here that the judgment of the court below is correct, unless we find that ''the evidence preponderates against the judgment.''

The record shows that defendant issued the policy; that the fire occurred as alleged; and that the plaintiff thereby sustained the loss and damage in the sum of $565.90 as adjudged by the trial court. These facts are conceded on the brief for defendant, and the sole contention on behalf of defendant is that the proof shows a breach of the condition in the policy set forth in defendant's third plea, supra, to which condition we will, for brevity, refer as the ''vacancy clause.'' The facts pertinent to the issue above indicated will now be stated. The building was partially destroyed by fire on October 5, 1933. An ''adjustment'' of the amount of this loss at the sum of $687.50 was reached by agreement of the parties on October 17, 1933, but such adjusted loss was not paid by defendant until December 15, 1933—there being a provision in the policy which extended the time for payment of the loss for a period of 60 days after such ascertainment thereof.

The insured building remained ''vacant'' (as that term is defined in the policy) at all times after the aforesaid fire on October 5, 1933. The plaintiff made no request for a vacancy permit and none was issued by defendant. It appears that two rooms of the house (referred to in the record as the front room and the living room) were not destroyed or seriously damaged by said first fire, and there was some controversy below as to whether the house was fit for occupancy thereafter. However, the kitchen, bedroom, and the bathroom and toilet facilities were practically destroyed; and we find from the weight of the proof that the house was not reasonably habitable at any time after the first fire.

The premises were vacant at the time of the first fire. Plaintiff's tenant had moved out on October 3d—two days before the fire— and a new tenant had contracted with plaintiff to move into the house on October 6th.

Under the policy in question, the building was insured to an amount not exceeding $1,500, and the settlement of the loss occasioned by the first fire at $687.50 did not terminate the insurance contract. Plaintiff was so assured by H. C. McCall, who repre-

sented defendant in the adjustment of the fire loss in October, 1933. On this. point, plaintiff testified that, at the time the agreement for the adjustment of the loss was reached in McCall's office, one Figenbaum, an insurance solicitor, was present, and Figenbaum asked plaintiff if he did not "want some more insurance on the place;" whereupon McCall said. "He doesn't need any insurance because he is completely covered for the balance of the $800 whatever is in there," and that plaintiff then said: "I won't need any more insurance on it until I get it all fixed up," and plaintiff adds in his testimony, "That was all that was said." The testimony of H. C. McCall, witness for defendant, is substantially to the same effect. He says:

"A. Mr. Feigenbaum, representing Mr. St. Charles, and Mr. St. Charles, were both in my office, Mr. Feigenbaum was soliciting new insurance, and I made the statement to Mr. St. Charles that it was not necessary at this time for him to reinsure his property, that the remainder of the policy stayed in effect after the fire, after the payment of the first loss during the terms of the policy under the provisions of the policy contracts, that amount would stay in effect.

"Q. Subject to the terms and conditions of the policy?

"A. Under the terms and conditions of the policy, and I stated it remained in force for the remaining $812.50, that is right, sir.

"Q. That was your interpretation of the policy?

"A. Yes, sir."

It should be stated, however, that McCall was a member of an "adjustment organization" in the city of Nashville, and was employed by defendant to represent it in the adjustment of plaintiff's loss in October, 1933, but he did not otherwise represent defendant in any capacity whatever. The firm of Schmitt & Gibson, with offices at Nashville, Tennessee, were "State Agents," and through them as such agents defendant recognized the policy as an existing contract subsequent to the second fire, which occurred on January 13, 1934, by a letter to plaintiff under date of January 17, 1934, purporting to cancel the policy, which letter reads as follows:

"Agency at Nashville, Tennessee.
"Date January 17th 1934.

"Mr. Paul St. Charles,
"610 Third Avenue North
"Nashville, Tennessee.

"Dear Sir: We. hereby cancel our Policy No. GFW 6 issued to you on February 18, 1931 and return to you the pro rata unearned premium of $—.83¢. Return premium will be paid on demand at 515 Stahlman Bldg. Subject to loss of January 13, 1934.

"You will, therefore, please take notice that at the expiration of five (5) days from the receipt of this notice, the said policy will terminate and cease to be in force.

"Respectfully yours

"Carolina Insurance Company

"(Insert here name of Insurance Company as shown on policy)

"Schmitt & Gibson, State Agents

"Per J. E. Schmitt.

"State Agents."

Referring to the document just quoted, it is said in the brief for defendant that "it is doubtful whether this letter is a part of the transcript."

A document purporting, from its contents and appearance, to be the original of the letter above quoted, is attached to the transcript, and bears notations thereon as follows:

"Ex. 'A' Cross Ex. Mrs. Graves."

"Identified, July 22, 1935. Langford, Judge.

"Filed July 22, 1935. Hugh Freeman, Clerk By W. R. Ahearn, Deputy."

(The bill of exceptions was authenticated by the trial judge and marked "filed" by the Clerk on July 2, 1935.)

But the trial court did not order or direct that the original of said letter be sent up as a part of the record to this court, and we think it is doubtful whether it (the original attached to the transcript) is a part of the record for the purpose of the appeal; but we also think it is not important to decide how this may be, for the reason that the contents of the letter were read into the testimony of the witness Mrs. Rexie Graves, which is included in the bill of exceptions; so that said letter is a part of the record here without regard to the original.

A part of the policy in suit consists of four paragraphs, entitled at the top, in bold type, "Direct Property provisions referred to in and made part of this form (No. 50)." The first three of these paragraphs have been hereinbefore copied as a part of defendant's third plea, and need not be repeated. The fourth paragraph, constituting a part of said "Direct Property provisions," is as follows:

"Permission granted to make alterations, improvements and repairs to any building herein described, and to complete same if under construction, and the insurance, if any hereunder on such building is hereby extended and made to cover such alterations, improvements and repairs, and the building materials and supplies therefor or entering into the construction of such building while contained therein or on the premises immediately adjacent thereto."

It is seen from the foregoing statement of record facts that the insured's premises were "vacant" at the time of the second fire, and had been continuously vacant theretofore for a period of approximately 100 days, contrary to the conditions of the "vacancy clause" in the policy.

A clause that the policy shall be void "if the premises be or become vacant and unoccupied and so remain for a certain specified time, is reasonable, valid and binding." Joyce on Insurance (2 Ed.), vol. 4, section 2225, p. 3783; Couch on Insurance, vol. 4, section 970, p. 3402. It was so held in the case of Ridge v. Insurance Co., 9 Lea, 507.

And it is not necessary for the insurer to show, in order to avail itself of a breach of the vacancy clause, that the vacancy increased the risk. 4 Couch, section 970, p. 3405; Ridge v. Insurance Co., supra.

But the vacancy of the premises beyond the stipulated time limit merely operates to suspend the insurer's liability under the policy, and a subsequent occupancy of the premises before the expiration date of the policy will revive it. In other words, the "true meaning" of such vacancy clause is, "the policy shall be void or inoperative during the vacancy." Ridge v. Insurance Co., supra, 9 Lea, 507, at page 511; Insurance Co. of North America v. Pitts, 88 Miss. 587, 41 So. 5, 7 L. R. A. (N. S.), 627, 117 Am. St. Rep., 756, 9 Ann. Cas., 54; Viele v. Germania Insurance Co., 26 Iowa, 9, 51, 96 Am. Dec. 83.

It is insisted for plaintiff that defendant waived the conditions of the policy with respect to vacancy of the premises. To this contention of the plaintiff, the defendant offers two replies, the first of which is that the plaintiff did not plead such waiver; that a waiver is but a species of estoppel; and that an estoppel, in order to be available, must be pleaded.

Although it has been held that there is "a clear technical distinction between waiver and estoppel," in that "the waiver is the voluntary surrender of a right," whereas estoppel is "the inhibition to assert a right because of the mischief that would follow" (2 Couch, section 530, p. 1597), we may assume, for the purposes of the instant case, that "the doctrine of waiver, as asserted against insurers to avoid the enforcement of conditions in policies of insurance, is only another name for the doctrine of estoppel" (Id. p. 1597).

However, we cannot agree to defendant's contention that plaintiff is precluded from insisting upon a waiver by reason of his failure to plead it. In Tennessee, an estoppel in pais need not be specially pleaded in an action at law, although the rule is otherwise in equity cases. Boone v. Citizens' Bank & Trust Co., 154 Tenn., 241, 249, 250, 290 S. W., 39, 50 A. L. R., 1369.

But it is said for defendant that, if plaintiff may rely upon a waiver without specially pleading it, there is no evidence of such waiver in this case.

It is insisted for the plaintiff that the provision of the policy with reference to its coverage in the event of permission granted to make repairs, etc., to the insured building should be considered in connection with the "vacancy clause," and that, as repairs had been begun 2 or 3 days before the second fire, the "permission to repair" clause superseded the "vacancy clause;" and especially so since the defendant had knowledge of the partial destruction of the building by the first fire and withheld payment for approximately 60 days after it admitted liability in a specific sum which plaintiff agreed to accept.

At this point we may observe, in passing, that it is said in defendant's brief:

"The plaintiff introduced no proof showing or tending to show the insurer knew of this long vacancy."

Whether Schmitt & Gibson, defendant's agents and representatives at Nashville, knew of the continued vacancy of the premises in question after the first fire, is not disclosed by the record; but this was a fact peculiarly within the knowledge of the defendant's representatives, and, if it was material, the burden was on defendant to prove its lack of knowledge. Whitelaw Furniture Co. v. Boon, 102 Tenn., 719, 52 S. W., 155; Jones on Evidence (2 Ed.), vol. 2, sections 494, 495; Standard Oil Co. v. State, 117 Tenn., 618, 672, 100 S. W., 705, 10 L. R. A. (N. S.), 1015; Fisher v. Insurance Co., 124 Tenn., 450, 483, 138 S. W., 316, Ann. Cas. 1912D, 1246; Western Union Telegraph Co. v. Lamb, 140 Tenn., 107, 111, 203 S. W., 752; Citizens Bank v. Langford, 6 Tenn. App., 238, 242.

However, we do not think that, if the defendant's representatives knew, throughout the interim between the first and second fires, that the premises were vacant, such knowledge on their part would, without more, be controlling or determinative. Ridge v. Insurance Co., supra, 9 Lea, 507, at page 509.

"Provisions and conditions relating to the occupancy of premises insured, like all others which are inserted for the benefit of the insurer in a contract of, or for, insurance, may be waived by it, or an estoppel may be created." 2 Couch, section 544, p. 1696.

The vacancy clause is waived if "the property be such that the parties must have contemplated that it would not be occupied for sometime, as where the insurance is upon a building under course of construction." 4 Couch, section 9700, p. 3438; Dodge v. Grain, etc., Ass'n, 176 Iowa, 316, 157 N. W., 955.

By the terms of the policy involved in the instant case, the plaintiff had 60 days from and after the insured building became vacant in which to put it in habitable condition without a breach of the

vacancy clause, and the terms of the policy also contemplated that, upon application, the insurer would, if the conditions justified such action, issue a permit for further vacancy. The plaintiff did not offer any substantial excuse for his failure to repair the building or to apply for an extension of the vacancy permit.

We find nothing in the aforesaid clause providing for permission to make repairs upon which a waiver of the vacancy clause by the defendant could be predicated in this case. It is said in the brief for defendant that, "this clause does three things: (1) It gives permission to alter and make repairs on an existing building; (2) If the building is a new one in process of construction when the policy is issued it allows completion of construction; and (3) When and if repairs are made, such as the addition of a room or change of interior, or when new building is completed, the insurance coverage is extended so as to afford protection to the added room or the completed building." We think this is a correct analysis and interpretation of said paragraph of the policy.

It is further insisted for plaintiff that the letter of defendant's agents, Schmitt & Gibson, under date of January 17, 1934, canceling the policy, was an admission that the policy was still in force, and therefore a waiver of a forfeiture for a breach of the vacancy clause.

The policy reserved to the insurer the right to cancel it at any time upon 5 days' notice, in which event the company should "return only the pro rata premium."

In view of the rule heretofore stated, that the true meaning of the vacancy clause is that the policy shall be void or inoperative during the vacancy, the exercise by the insurer of its reserved right to cancel the policy was not an admission that the policy had been operative during the vacancy. The insurer may insist upon the invalidity of the policy for the insured's breach of a condition in the policy without returning or offering to return any portion of the premiums paid. Couch on Insurance, vol. 3, section 738, p. 2415.

It results that the defendant's assignments of error are sustained. Judgment will therefore be entered reversing the judgment of the circuit court and dismissing the plaintiff's suit.

The costs of the cause, including the costs of the appeal, will be adjudged against the plaintiff, Paul St. Charles.

Crownover and De Witt, JJ., concur.