IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 3, 2021 Session

**CHARLES CLIFTON v.
TENNESSEE FARMERS MUTUAL INSURANCE COMPANY**

**Appeal from the Circuit Court for Warren County**
**No. 18-CV-909          Larry B. Stanley, Jr., Judge**

**No. M2019-02193-COA-R3-CV**

In this action for breach of an insurance policy, the trial court granted summary judgment in favor of the defendant insurance company upon finding that, pursuant to an occupancy clause, the insurance policy had become "automatically void" when the plaintiff homeowner had vacated the insured residence and had allowed other individuals to occupy the insured residence without obtaining the insurance company's written consent. The trial court subsequently certified its summary judgment order as final, pursuant to Tennessee Rule of Civil Procedure 54.02, determining that although the plaintiff's claims were dismissed, the insurance company would be allowed to pursue a counter-complaint it had filed against the plaintiff. The plaintiff has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Timothy J. Crosby, Chattanooga, Tennessee, for the appellant, Charles Clifton.

Steven A. Dix, Murfreesboro, Tennessee, for the appellee, Tennessee Farmers Mutual Insurance Company.

**OPINION**

I. Factual and Procedural Background

The facts underlying this action are essentially undisputed. The plaintiff, Charles Clifton, owned improved real property located at 351 West Maple Street in Morrison,

Tennessee, including a residence ("the Residence") upon which he maintained an insurance policy ("the Policy") through the defendant, Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"). The Residence was destroyed by fire on October 24, 2017. After Mr. Clifton filed a claim for the loss, Tennessee Farmers issued a denial letter based on Mr. Clifton's alleged breach of an occupancy clause ("Occupancy Clause") in the Policy. Although the full Policy is not in the record on appeal, the parties quoted the language of the Occupancy Clause identically, including the emphases depicted below in the body of the clause, in pleadings before the trial court as follows:

<u>ACTS WHICH AUTOMATICALLY
VOID THIS POLICY</u>

<u>Occupancy Without Written Consent</u>

This policy shall be automatically void as to all **insureds** if:

1.      no **insureds** occupy the **residence premises**; and

2.      any **insured** allows anyone to **occupy** the **residence premises** without **our** written consent.

On June 13, 2018, Mr. Clifton filed a complaint in the Warren County Circuit Court ("trial court"), alleging that Tennessee Farmers had breached the terms of the Policy by failing to pay his claim for fire damages. Mr. Clifton sought a judgment in the amount of the limits provided in the Policy plus twenty-five percent for Tennessee Farmers' "bad faith, costs, and interest" pursuant to Tennessee Code Annotated § 56-7-105.[1] He averred that the policy amounts included a maximum of $85,000.00 for losses to the Residence and $42,500.00 for losses to personal property. Mr. Clifton also

---

[1] Tennessee Code Annotated § 56-7-105(a) (2016) provides:

The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided, further, that the additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

requested an award of punitive damages and a jury trial. Although he did not reference the Occupancy Clause in this pleading, Mr. Clifton noted in his complaint that the Policy defines "Occupy, Occupied, or Occupancy" as "the regular use of a premise as a dwelling place by the person or persons to whom reference is made." Mr. Clifton stated in the complaint that he "was the only 'Occupant' of the Subject Property at the time of loss."

Tennessee Farmers filed an answer and counter-complaint on August 20, 2018, denying that it had breached the Policy and asserting that the Policy had not been in effect at the time of the fire because it had been automatically voided by Mr. Clifton's actions. Tennessee Farmers averred that Mr. Clifton had begun living with his fiancé in September or October of 2016 and that he had then given permission to Treva and Bobby Glenn to begin occupying the Residence on February 1, 2017, and charged them rent. Tennessee Farmers also averred that it had not given its permission for the Glenns to occupy the Residence and that it had returned all premiums paid since February 1, 2017, to Mr. Clifton.

As to its counter-complaint, Tennessee Farmers alleged that Mr. Clifton had filed this action in bad faith. Tennessee Farmers sought a judgment, pursuant to Tennessee Code Annotated § 56-7-106, for an amount not to exceed twenty-five percent of the loss claimed under the Policy by Mr. Clifton.[2] Tennessee Farmers also requested a jury trial in its counter-complaint. Mr. Clifton filed an answer to the counter-complaint, admitting that Tennessee Farmers had not provided written permission for the Glenns to stay at the Residence and otherwise denying all substantive allegations. Upon Mr. Clifton's subsequent motion, the trial court entered an order in April 2019 setting the case for trial in November 2019.

On May 23, 2019, Tennessee Farmers filed a motion for summary judgment, arguing that the undisputed material facts demonstrated that on February 1, 2017, Mr. Clifton had committed acts that resulted in an automatic breach of the Policy and operated to make the Policy of no effect when the fire occurred in October 2017. In its memorandum in support of the summary judgment motion, Tennessee Farmers referenced a sworn statement given by Mr. Clifton on December 18, 2017, in which he purportedly stated that he had begun residing with his fiancé a year prior to the fire and

---

[2] Tennessee Code Annotated § 56-7-106 (2016) provides:

> In the event it is made to appear to the court or jury trying the cause that the action of the policyholder in bringing the suit was not in good faith, and recovery under the policy is not had, the policyholder shall be liable to the insurance company, corporation, firm, or person in a sum not exceeding twenty-five percent (25%) of the amount of the loss claimed under the policy; provided, that the liability, within the limits prescribed, shall, in the discretion of the court or jury trying the cause, be measured by the additional expense, loss, or injury inflicted upon the defendant by reason of the suit.

that he had allowed the Glenns, who were relatives of his fiancé, to occupy the Property in February 2017 with an agreement that they would pay $300.00 in monthly rent. Tennessee Farmers attached to its memorandum a utilities invoice reflecting that the utilities at the Residence were in Bobby Glenn's name while the Glenns resided there.

Concomitant with its motion for summary judgment, Tennessee Farmers filed a notice that it was filing (1) Mr. Clifton's December 2017 sworn statement, (2) a certified copy of the Policy, and (3) a copy of Mr. Clifton's responses to Tennessee Farmers' request for admissions. We note that although Mr. Clifton's responses to the request for admissions are in the record on appeal, his December 2017 sworn statement and the complete Policy are not in the record. In his responses, Mr. Clifton admitted that he began staying at his fiancé's residence in McMinnville in September or October of 2016; that he allowed the Glenns to stay at the Residence beginning February 1, 2017; and that he did not have written permission from Tennessee Farmers for the Glenns' occupancy. However, Mr. Clifton qualified this last admission by stating that "the Glenns were not occupying the premises at the time of the loss."

Mr. Clifton filed a response to the summary judgment motion on July 8, 2019, asserting that "a genuine issue of material fact" existed that "would lead a rational trier of fact to find in [his] favor" because "[a]t the time of the fire [Mr. Clifton] occupied the insured premise[s] and the policy was not void." Mr. Clifton concomitantly filed a response to Tennessee Farmers' statement of undisputed facts and an affidavit executed by him on July 8, 2019. In the response, he added to his earlier admissions that he had begun staying with his fiancé in September or October of 2016 while he was recovering from open heart surgery. In his July 2019 affidavit, Mr. Clifton stated the following in pertinent part:

> The same day Bobby and Treva Glenn had moved out of [the Residence] I changed the locks on the doors.
>
> The weekend of October 14th I participated in a city wide yard sale, selling items from the yard of [the Residence].
>
> I stayed at [the Residence] throughout the evenings of the community yard sale.
>
> After the Glenn[s] had left, I moved boxes of personal possession[s] back into [the Residence] and began fixing the bedroom floor.
>
> I occupied [the Residence] at the time of the fire, October[] 24, 2017.

- 4 -

(Paragraph numbering omitted.)

The trial court conducted a hearing spanning three non-consecutive days on June 25, July 9, and November 12, 2019. No transcript of this summary judgment hearing is in the record on appeal. In his principal appellate brief, Mr. Clifton states that following oral arguments, "the trial court allowed for additional briefing to be submitted on the specific issue of whether a breach of an occupancy clause in a fire insurance policy avoids the policy entirely or merely suspends the policy during the existence of the breach." Mr. Clifton filed a brief addressing this issue on August 30, 2019. On appeal, the parties indicate in their respective statements of the case that the trial court heard additional oral argument on the final hearing day. On November 15, 2019, the trial court entered an order granting summary judgment in favor of Tennessee Farmers. The court found that no genuine issues of material fact existed and that as a matter of law, Mr. Clifton's actions had automatically voided the Policy when he violated the Occupancy Clause by vacating the Residence and allowing other individuals to reside there without obtaining Tennessee Farmers' written consent.

Mr. Clifton filed a notice of appeal with this Court on December 12, 2019. On June 4, 2020, this Court entered an order directing the parties to obtain, within ninety days, a final order from the trial court disposing of Tennessee Farmers' counterclaim or show cause why the appeal should not be dismissed for lack of subject matter jurisdiction. Mr. Clifton subsequently filed a motion in the trial court seeking to have the trial court's November 2019 order deemed a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02. Tennessee Farmers filed a response objecting to the Rule 54.02 motion, arguing that its counterclaim should not be dismissed because it was valid and had not been heard on the merits. On August 19, 2020, Tennessee Farmers filed a motion to amend its counter-complaint, seeking to add a claim for damages in the amount of $53,420.16 that it had allegedly been "wrongfully obligated to pay" to First National Bank of Middle Tennessee, the mortgagee of the Residence, "as a result of [the] now voided insurance policy."

On August 28, 2020, the trial court entered an order entitled, "Plaintiff's Rule 54.02 Order on Defendant's Motion [for] Summary Judgment," certifying its November 2019 order as final, pursuant to Tennessee Rule of Civil Procedure 54.02, upon finding that the order had disposed of Mr. Clifton's claims in their entirety and that there was no just reason for delay. However, the trial court expressly determined that the November 2019 order "in no way restricts or impedes [Tennessee Farmers'] Counter-Complaint in this matter, and all matters relevant thereto are hereby reserved." The trial court also found that Tennessee Farmers would be permitted to file an amended counter-complaint

asserting its additional claim. This appeal followed, focusing solely on the November 2019 order disposing of Mr. Clifton's complaint.

## II. Issues Presented

Mr. Clifton presents two issues on appeal, which we have restated as follows:

1.     Whether the trial court erred by ruling that Mr. Clifton's breach of the Occupancy Clause in the Policy automatically voided the Policy despite Mr. Clifton's assertion that his reoccupation of the Residence revived the Policy.

2.     Whether the trial court erred by granting summary judgment in favor of Tennessee Farmers on Mr. Clifton's claim.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a

response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348, [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

This case presents a question of whether the Residence was covered by the Policy at the time of the fire. As this Court has explained concerning insurance policy interpretation:

"Tennessee law is clear that questions regarding the extent of insurance coverage present issues of law involving the interpretation of contractual language." *Garrison v. Bickford,* 377 S.W.3d 659, 663 (Tenn. 2012) (citing *Clark v. Sputniks, LLC,* 368 S.W.3d 431, 436 (Tenn. 2012); *Maggart v. Almany Realtors, Inc.,* 259 S.W.3d 700, 703 (Tenn. 2008)). Therefore, our standard of review is de novo with no presumption of correctness afforded to the trial court's conclusion. *Id.* (citing *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.,* 277 S.W.3d 381, 386 (Tenn. 2009)).

> "[I]nsurance policies are, at their core, contracts." *Allstate Ins. Co. v. Tarrant,* 363 S.W.3d 508, 527 (Tenn. 2012) (Koch, J., dissenting). As such, courts interpret insurance policies using the same tenets that guide the construction of any other contract. *Am. Justice Ins. Reciprocal v. Hutchison,* 15 S.W.3d 811, 814 (Tenn. 2000). Thus, the terms of an insurance policy "'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" *Clark,* 368 S.W.3d at 441 (quoting *U.S. Bank,* 277 S.W.3d at 386-87). The policy should be construed "as a whole in a reasonable and logical manner," *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs.,* 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998), and the language in dispute should be examined in the context of the entire agreement, *Cocke Cty. Bd. of Highway Comm'rs v. Newport Utils. Bd.,* 690 S.W.2d 231, 237 (Tenn. 1985).

> In addition, contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls. *Tata v. Nichols,* 848 S.W.2d 649, 650 (Tenn. 1993); *VanBebber v. Roach,* 252 S.W.3d 279, 284 (Tenn. Ct. App. 2007). However, a "strained construction may not be placed on the language used to find ambiguity where none exists." *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn. 1975).

*Id.* at 663-64.

*S. Trust Ins. Co. v. Phillips*, 474 S.W.3d 660, 664-65 (Tenn. Ct. App. 2015). "The courts in Tennessee have long recognized that a vacancy clause in a fire policy is reasonable, valid and binding." *S. Trust Ins. Co.*, 474 S.W.3d at 664 (quoting *Carroll v. Tenn. Farmers Mut. Ins. Co.,* 592 S.W.2d 894, 895 (Tenn. Ct. App. 1979)).

## IV.  Grant of Summary Judgment to Tennessee Farmers

Mr. Clifton contends that the trial court erred by granting summary judgment in favor of Tennessee Farmers and dismissing his claim because the court erroneously ruled that Mr. Clifton's breach of the Occupancy Clause automatically voided the Policy. Although Mr. Clifton acknowledges that he breached the Occupancy Clause when he vacated the Residence and allowed the Glenns to move in without Tennessee Farmers' written consent, he argues that the trial court erred by declining to find that his purported reoccupation of the Residence revived the Policy such that the Residence was covered at the time of the fire. He thereby contends that summary judgment is precluded by genuine issues of material fact concerning his reoccupation of the Residence. Tennessee Farmers argues that in granting summary judgment, the trial court properly interpreted the plain language of the Policy to find that it was automatically voided by Mr. Clifton's breach of the Occupancy Clause. Tennessee Farmers thereby asserts that no genuine issues of material fact precluded summary judgment because even if Mr. Clifton had reoccupied the Residence at the time of the fire, the Policy was void and no longer in effect.

### A.  Absence of Policy in Appellate Record

As a threshold matter, we note that although the entire Policy was before the trial court, as indicated by Tennessee Farmers' notice filed with its motion for summary judgment, this Court has not been provided with the Policy as a whole on appeal. However, throughout the record and on appeal, both parties have quoted the language of the Occupancy Clause identically with the same bolded and underlined emphases in the body of the clause.

As our Supreme Court has elucidated:

> In construing a contract, the entire contract should be considered in determining the meaning of any or all of its parts. It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another.

*Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008) (quoting *Cocke Cty. Bd. of Highway Comm'rs v. Newport Utils. Bd.,* 690 S.W.2d 231, 237 (Tenn. 1985)) (internal citations omitted in *Maggart*). The *Maggart* Court noted this rule in the context

of the Court's declining to interpret one sentence of a two-sentence liability release independently from the sentence preceding it. *Maggart*, 259 S.W.3d at 705. Likewise, this Court in *S. Trust Ins.* emphasized the need to consider the entire contract when the Court had the entire insurance policy before it and declined the plaintiff insurance company's request to limit the Court's consideration "to the section of the policy addressing dwelling coverage under Coverage A and ignore the sections, on the very same page, addressing other types of coverage." 474 S.W.3d at 670.

In the instant appeal, we find comparison to a case in which the insurance policy was completely absent from the record instructive. In *Smith v. Amerisure Ins. Co.*, 1994 WL 679066, at *1 (Tenn. Ct. App. Dec. 5, 1994), the trial court had granted summary judgment to the defendant insurance company upon determining that the plaintiff homeowners had transferred the deed to the insured property to their son and no longer possessed an insurable interest in the property. This Court remanded the matter to the trial court, pursuant to Tennessee Code Annotated § 27-3-128,[3] for supplementation of the record with, *inter alia*, the insurance policy and "any other documents bearing on the validity of the insurance claim." *Smith*, 1994 WL 679066, at *1-2. In remanding, this Court stated in pertinent part:

> We have made a thorough review of the record and are of the opinion complete justice cannot be had by reason of defects in the record. Material issues evolve around the provisions of the policy of insurance. The insurance policy, however, is not in the record. The record fails to show the policy was filed as an exhibit and cannot be reached pursuant to T.R.A.P. Rule 24(e).

*Id.* at *1.

In contrast, the record in the case at bar demonstrates that the trial court had the entire Policy before it when considering Tennessee Farmers' motion for summary judgment. In its final judgment, the trial court found the Occupancy Clause to be dispositive and did not reference any other portion of the Policy as either affecting or contradicting the Occupancy Clause. Moreover, neither party has raised an issue that any other part of the Policy should have been considered as affecting the operation of the

---

[3] Tennessee Code Annotated § 27-3-128 (2017) provides:

> The court shall also, in all cases, where, in its opinion, complete justice cannot be had by reason of some defect in the record, want of proper parties, or oversight without culpable negligence, remand the cause to the court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right.

Occupancy Clause. Inasmuch as the parties have presented no dispute concerning the actual language of the Occupancy Clause, disputing solely the language's effect in light of the facts, and inasmuch as the Occupancy Clause is in the record before us, we determine that justice can be served in this instance through interpretation of the plain language in the Occupancy Clause despite the absence of the entire Policy in the record. We emphasize, however, that our determination in this regard is limited to the unique facts and procedural posture of this case and that the better practice would have been for the parties to ensure transmittal of the entire Policy from the trial court to the appellate court.

## B. Effect of Occupancy Clause Breach

Mr. Clifton acknowledges that when he vacated the Residence to reside with his fiancé and allowed the Glenns to occupy the Residence without written consent from Tennessee Farmers, the two conditions provided under the Occupancy Clause for the Policy to become "automatically void" were met. However, Mr. Clifton avers that he would be able to prove at trial that he reoccupied the Residence prior to the fire. He thereby argues that with his reoccupation, the Policy was only void during the time that he was absent from the Residence and allowed someone else to reside there without Tennessee Farmers' consent. Mr. Clifton argues that the trial court improperly interpreted the phrase, "automatically void," to mean that the Policy could not be reactivated by his reoccupation of the Residence.

In granting summary judgment in favor of Tennessee Farmers, the trial court specifically found in pertinent part:

> The Court finds there are no genuine issues of material fact. [Mr. Clifton] moved out of [the Residence]. He was living with his fiancé[] and had allowed relatives of his fiancé[] to stay at [the Residence]. Tennessee Farmers Mutual Insurance Company was not notified that [Mr. Clifton] had moved out of the residence or that others were occupying the residence. The Tennessee Farmers insurance policy was automatically void as to all insureds when the property was vacated by [Mr. Clifton]. Further, Tennessee Farmers did not give written consent of others to occupy the residence. This was an additional act which automatically voids the insurance policy.

Upon careful review of the record and applicable authorities, we agree with the trial court's finding that Mr. Clifton's actions automatically voided the Policy.

We begin our analysis with interpretation of the plain language in the Occupancy Clause, particularly the phrase at the center of this issue: "automatically void." *See Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005) ("In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language."). The Occupancy Clause is set forth under a heading that states, "<u>ACTS WHICH AUTOMATICALLY VOID THIS POLICY</u>" and a subheading that reads, "<u>Occupancy Without Written Consent</u>." The clause then provides:

> This policy shall be automatically void as to all **insureds** if:
>
> 1.    no **insureds** occupy the **residence premises**; and
>
> 2.    any **insured** allows anyone to **occupy** the **residence premises** without **our** written consent.

It is undisputed that Mr. Clifton was the "**insured**" under the Policy and that "**our**" in "**our** written consent" refers to Tennessee Farmers. We note that the coordinating conjunction, "and," joins two conditions for the Policy to become "automatically void": (1) that "no **insureds** occupy" the Residence <u>and</u> (2) that "any **insured** allows anyone to **occupy**" the Residence without Tennessee Farmers' "written consent." *See Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 21 (Tenn. Ct. App. 2002) (citing with approval the definition of "and" in BLACK'S LAW DICTIONARY 86 (6th ed. 1990) as a "conjunction connecting words or phrases expressing the idea that the latter is to be added to or taken along with the first"). As to the first condition that would automatically void the Policy under the Occupancy Clause, it is undisputed that Mr. Clifton did not occupy the Residence while he resided with his fiancé, beginning in September or October of 2016. Under the second condition, it is also undisputed that Mr. Clifton allowed the Glenns to occupy the Residence, beginning on February 1, 2017, and that the Glenns' occupation was without Tennessee Farmers' written consent.

The question then narrows to the meaning of "automatically void," specifically whether this phrase means that the Policy became void when these two conditions were met or whether the Policy could have been reactivated by Mr. Clifton's reoccupation of the Residence. Tennessee Farmers relies on this Court's decision in a case also involving Tennessee Farmers as the defendant, *Gredig v. Tenn. Farmers Mut. Ins. Co.*, 891 S.W.2d 909 (Tenn. Ct. App. 1994). In *Gredig*, this Court determined that the insurance policy at issue was void at the time of a residential fire because the plaintiff policyholder had not been occupying the insured premises and had allowed his brother and sister-in-law to occupy the insured premises without obtaining Tennessee Farmers' written consent in violation of the following policy clause:

- 12 -

This entire policy shall be void if at any time permission is given by an **insured** for occupancy of the **residence premises** by anyone other than an **insured person** without our written consent.

*Gredig*, 891 S.W.2d at 913-15 (emphasis in policy). In determining that the policy had been "rendered void," the *Gredig* Court explained: "If the policy is void, and we hold it is, then it is a nullity and void for all purposes. It is as if it had never been issued." *Id.* at 915; *see also* BLACK'S LAW DICTIONARY 1604 (8th ed. 2004) (defining "void" in relevant part as "[o]f no legal effect; null").

Mr. Clifton argues that *Gredig* is distinguishable from the instant action because in *Gredig*, no question existed as to whether the insured plaintiff had reoccupied the insured premises at the time of the fire. Upon careful review, we determine this to be a distinction without a substantive difference. In this case, pursuant to the plain meaning of "void," the Policy became a nullity at the point that both conditions of the Occupancy Clause were met when Mr. Clifton vacated the Residence and then allowed the Glenns to occupy the Residence without Tennessee Farmers' written consent.

In support of his argument that "a breach of a vacancy or occupancy clause in a fire insurance policy merely suspend[s] the policy during the existence of the breach," Mr. Clifton relies heavily on this Court's decision in *Carolina Ins. Co. of Wilmington, N.C. v. St. Charles*, 98 S.W.2d 1088 (Tenn. Ct. App. 1936). In *Carolina Ins.*, the plaintiff property owner sought recovery from the defendant insurance company for damages incurred as the result of the second of two fires affecting the property at issue. *Carolina Ins.*, 98 S.W.2d at 1089. The subject property had been utilized by the plaintiff as a rental residence, and the insurance policy contained the following vacancy clause:

Permission granted for the within described premises to be and remain vacant for a period not exceeding sixty days at any one time the term "vacant" being construed to mean an empty building devoid of personal habitation; or, to be and remain unoccupied for a period not exceeding six months at any one time, the term "unoccupied" being construed to mean a building that is entirely furnished, but with personal habitants temporarily absent.

It is made a condition of this insurance that the premises shall be kept properly closed and secured to prevent trespassing or the entrance of unauthorized persons during the term of vacancy or unoccupancy.

If this form is attached to a fire policy and premises are vacant for a period exceeding sixty days, or unoccupied for a period exceeding six months, at any one time, this policy is void unless a special form or permission therefor is attached hereto.

*Id.* (internal quotation marks referring to record omitted).

In *Carolina Ins.*, when a fire occurred that partially damaged the rental residence, the residence was vacant but permissibly so within the time limitations of the policy. *Id.* at 1091. The insurance company paid to the plaintiff an "'adjustment' of the amount of this loss." *Id.* Although some rooms of the residence were not damaged, the residence was uninhabitable after this initial fire. *Id.* The residence then remained vacant, without the plaintiff's submitting any application for an extended vacancy, through the occurrence of a second fire. *Id.* at 1093. Although the trial court had granted relief to the plaintiff for the destruction caused by the second fire, this Court reversed, examining the language of the vacancy clause and reviewing the facts to conclude:

By the terms of the policy involved in the instant case, the plaintiff had 60 days from and after the insured building became vacant in which to put it in habitable condition without a breach of the vacancy clause, and the terms of the policy also contemplated that, upon application, the insurer would, if the conditions justified such action, issue a permit for further vacancy. The plaintiff did not offer any substantial excuse for his failure to repair the building or to apply for an extension of the vacancy permit.

*Id.*

Mr. Clifton relies on a portion of the analysis in which the *Carolina Ins.* Court stated the following concerning the type of vacancy clause found in that case:

But the vacancy of the premises beyond the stipulated time limit merely operates to suspend the insurer's liability under the policy, and a subsequent occupancy of the premises before the expiration date of the policy will revive it. In other words, the "true meaning" of such vacancy clause is, "the policy shall be void or inoperative during the vacancy."

*Id.* at 1092 (quoting *Ridge v. Scottish Commercial Ins. Co.*, 77 Tenn. 507, 511 (1882)) (other internal citations omitted). Interpreting the policy terms, this Court determined in *Carolina Ins.* that the policy had been void at the time of the second fire because the vacancy had extended beyond the sixty days allowed by the policy without the plaintiff's

having applied for an extension according to the policy terms. *Carolina Ins.*, 98 S.W.2d at 1093.

In the case at bar, Mr. Clifton argues that despite the outcome of this Court's decision in *Carolina Ins.*, the decision supports his position that upon his purported reoccupation of the Residence, the Policy was reactivated. However, we find *Carolina Ins.* to be highly factually distinguishable from the instant action. The vacancy clause at issue in *Carolina Ins.* indicated that the parties contemplated periodic vacancy of the residence as part of the policy and that the insurance company had placed a sixty-day time limit upon any such vacancy unless the insured applied for an extension. *Id.* In contrast, the instant Policy indicates no such contemplation of vacancy and instead specifically sets forth that the Policy becomes "automatically void" if no person insured by the Policy occupies the Residence and if any insured person allows anyone else to occupy the Residence without Tennessee Farmers' written consent.

Mr. Clifton also relies on the nineteenth-century Tennessee Supreme Court decision quoted with approval in *Carolina Ins.*, as noted above, *Ridge v. Scottish Commercial Ins. Co.*, 77 Tenn. 507 (1882). We likewise find *Ridge* to be highly factually distinguishable from the instant action. In *Ridge*, the plaintiff, a residential property owner, was out of the country for an extended period of time when the residence he had insured through the defendant insurance company "was burned." *Ridge*, 77 Tenn. at 508-09. According to the plaintiff, his agent had "procure[d] a good and proper tenant," who had been scheduled to move in to the residence on what turned out to be "the day after it was burned." *Id.* at 509. The policy at issue in *Ridge* provided: "If the within mentioned premises shall * * * become vacant or unoccupied, * * * without the assent of the company endorsed hereon, * * * then, and in every such case, this policy shall be void." *Id.* at 508 (asterisks in original). The *Ridge* plaintiff alleged that the insurance company's local agent "was familiar with the property and the purposes for which it was used, and knew that in all probability it would necessarily become temporarily vacant by the ordinary changing of tenants, and that it was not contemplated by the parties that the policy should become void in such contingency." *Id.* at 509.

Noting that the question before it was one of "the true interpretation of the contract," the *Ridge* Court determined in pertinent part:

> The argument for the complainant is, that although the house was in fact vacant and unoccupied at the time it was burned, yet it was not the character of vacancy contemplated by the contract. That it being known that the house was leased or rented to tenants, it must necessarily have been contemplated that an occasional change of tenants would probably occur during the three years the policy was to run, and it would be unreasonable

- 15 -

to suppose that it was contemplated that the vacancy necessarily occurring upon one tenant moving out and another moving in, should render the policy void, or that the assent of the company should be obtained to such change of tenants in order to keep the policy alive, and although in this instance the vacancy continued four or five days, yet upon the facts stated, it was no more than the necessary and reasonable vacancy occurring upon a change of tenants, and was therefore not the character of vacancy which, in the meaning of the contract, was to avoid the policy.

Although the language is, that "the policy shall be void" in the event the premises shall become vacant or unoccupied without the assent of the company endorsed on the policy, yet the true meaning doubtless is, that the policy shall be void or inoperative during the vacancy, and so it is in terms expressed in some policies. This would be a reasonable stipulation upon the assumption that in the view of the contracting parties, the risk is greater during the time the premises are vacant than when they are occupied, and the parties might reasonably assume that such difference as to the risk really exists. But a stipulation that a temporary vacancy should render the policy void for the entire balance of the period covered by it, notwithstanding the premises be again occupied as before, would be clearly without reason, and hence it should not be so construed.

*Id.* at 509-11. Mr. Clifton relies on the second paragraph above to essentially argue that *Ridge* established a precedent for the proposition that any insurance policy rendered void pursuant to a vacancy or occupancy clause is void only so long as the insured property remains vacant, or in the situation at issue here, only so long as Mr. Clifton did not occupy the Residence. We disagree. Mr. Clifton's argument ignores the context of the *Ridge* Court's interpretation, specifically, as noted in the first paragraph quoted above, that the insured residence was known by the insurance company to be used as a rental and that an occasional change in tenants was to be reasonably expected. *See id.* at 510-11. Moreover, the *Ridge* Court ultimately reversed the trial court's judgment, which had been entered in favor of the plaintiff, upon determining that because the residence was vacant, "by the plain letter of the contract the policy was not in full force when the fire occurred." *Id.* at 515.

In support of his argument, Mr. Clifton also cites a treatise summarizing the *Carolina Ins.* Court's holding, *see* 15 Tenn. Juris. *Insurance* § 55 (2016), and late nineteen-century and early twentieth-century decisions from other states interpreting vacancy or occupancy clauses. We note that although these authorities may be persuasive, none is controlling for this Court. *See Brooks Cotton Co., Inc. v. Williams*, 381 S.W.3d 414, 422 (Tenn. Ct. App. 2012) (consulting a treatise on contract law and an

Alabama Supreme Court decision as persuasive but not controlling authority); *Summers Hardware & Supply Co. v. Steele*, 794 S.W.2d 358, 362 (Tenn. Ct. App. 1990) ("Cases from other jurisdictions, including federal cases, are always instructive, sometimes persuasive, but never controlling in our decisions."). Moreover, upon review, none of these authorities persuade us to interpret the language of the instant Occupancy Clause in a manner contrary to what we have determined to be its plain and unambiguous language. *See, e.g.*, *E. Tex. Fire Ins. Co. v. Kempner*, 27 S.W. 122, 122-23 (Tex. 1894) (comparing facts in *Ridge* to those in *E. Tex. Fire* and determining that "[r]eoccupancy did not revive the policy" in *E. Tex. Fire* because the policy was "exceptionally explicit" in providing that "if the house should become vacant or unoccupied without the consent of the company, the policy shall at once become null and void"); *but see, e.g.*, *Athens Mut. Ins. Co. v. Toney*, 57 S.E. 1013, 1013-15 (Ga. Ct. App. 1907) (determining that a "temporary vacancy" did not render the policy void despite a provision stating that the "entire policy" "shall be void" if an insured "building be or become vacant or unoccupied" for ten or more days).

Given the plain and unambiguous language of the Occupancy Clause, we determine that the trial court did not err in finding that the Policy was rendered void by Mr. Clifton's acts of vacating the Residence and subsequently allowing the Glenns to occupy the Residence without obtaining Tennessee Farmers' written consent. *See Gredig*, 891 S.W.2d at 915 ("It is not for us to re-write a contract to achieve a certain result. Our duty is to enforce the parties' agreement as we find it.").

### C. No Genuine Issues of Material Fact

Finally, Mr. Clifton argues that the trial court erred in granting summary judgment in favor of Tennessee Farmers because genuine issues of material fact existed regarding whether he had reoccupied the Residence prior to the fire. Having determined that the Policy was void at the time of the fire and could not therefore be reactivated by Mr. Clifton's reoccupation of the Residence, we further determine that no genuine issues of material fact existed that would have precluded summary judgment. We therefore conclude that the trial court properly granted summary judgment in favor of Tennessee Farmers, dismissing Mr. Clifton's complaint.

### V. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of Tennessee Farmers and dismissing Mr. Clifton's complaint. We remand this case to the trial court for enforcement of the summary

judgment, further proceedings as needed, and collection of costs below.  Costs on appeal are taxed to the appellant, Charles Clifton.


s/ Thomas R. Frierson, II
THOMAS R. FRIERSON, II, JUDGE